**NOVO TERAPEUTISK LABORATORI-UM A/S, Plaintiff-Appellee,**

v.

**BAXTER TRAVENOL LABORATORIES, INC., Gist-Brocades Fermentation Industries, Inc., and Gist-Brocades N. V., Defendants-Appellants.**

No. 78–1180.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1978.

Decided Feb. 27, 1979.

Reheard En Banc April 17, 1979.

On Rehearing En Banc Aug. 16, 1979.

Donald E. Egan, Chicago, Ill., for defendants-appellants.

Howard W. Clement, and Roy E. Hofer, Chicago, Ill., for plaintiff-appellee.

PANEL OPINIONS FILED
FEBRUARY 27, 1979

Before FAIRCHILD and CUMMINGS, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

The questions presented in this appeal arise from the district court's denial of the defendant's motion to disqualify plaintiff's counsel.

A clarification of the counsel in this action is essential. The opposing attorneys in this present appeal were, at one time, members of the same firm, known as Hume, Clements, Brinks, Willian, Olds & Cook, Ltd., (the Hume firm). On 31 December 1976, Granger Cook, Jr., left the Hume firm, and Mr. Cook is presently representing the defendants-appellants while, at the same time, attorneys from the Hume firm are presently representing the plaintiff-appellee.

The corporations listed as defendants-appellants have the following relationship: The original corporation involved was Baxter Laboratories (Baxter). Baxter Travenol Laboratories is its successor in interest and Travenol Laboratories is a wholly-owned subsidiary. Baxter Travenol Laboratories had an operation called the Wallerstein Division. On 11 July 1977, Gist-Brocades Fermentation, Inc., and Gist-Brocades, N.V., acquired Wallerstein from Baxter and agreed to indemnify Baxter with respect to this patent litigation, because it was allegedly the Wallerstein Division that was infringing the patent owned by plaintiff-appellee (Novo).

The original dispute stems from two competing patent applications. Plaintiff (Novo) filed its patent application for a milk-coagulating enzyme on 21 November 1966, while defendants filed a similar patent application on 6 December 1967. In 1971 the U.S. Patent Office declared an interference proceeding between the parties, which was finally resolved in favor of

the plaintiff on 23 February 1976 when the Supreme Court denied certiorari. The parties apparently agree that the old Hume firm did not represent Baxter in this interference litigation, although contemporaneously during 1975, the Hume firm was retained by Baxter for what the plaintiff characterizes as unrelated matters. Defendants claim that Attorney Granger Cook, Jr., was in charge of the Baxter account while he was with the Hume firm and that other present members of the Hume firm (including Mr. Ropski, who is now listed as counsel for plaintiff) rendered services to defendants. The key contention of defendants is that during 1976, Baxter anticipated a patent infringement action against them by Novo; and that during July of 1976, Cook, then a partner in the Hume firm, spent several hours reviewing legal authorities and conferring with Baxter attorneys in connection with a matter identified as "Microbial Rennet". It is suggested that the 2¼ hours were spent in consideration of initiating a declaratory judgment action against Novo (plaintiff in the present action), rather than wait for the patentee to bring an infringement action. However, no declaratory judgment action was brought and in December, 1976, Cook left the Hume firm, taking the Baxter account with him.

In February 1977, plaintiff filed the present patent infringement action against Baxter in the U.S. District Court for the District of South Carolina. On 1 August 1977, this case was transferred from South Carolina to the Northern District of Illinois. On 30 August 1977, the Hume firm filed motions to appear for plaintiff which were granted despite defendants' objections. Defendants thereafter filed motions to disqualify the Hume firm, but the district court denied the motions, holding that the "Canons of Ethics" have not been violated. The district court stated in part:

Assuming, *arguendo* that the services rendered by Hume were related to the patents here in issue, these services con-

* Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

stituted approximately two percent of the total representation of Travenol. Furthermore, those services were rendered primarily under the direction of Granger Cook. Travenol's current counsel who left Hume in 1976. Under these circumstances, this Court does not find that legal services by Hume were *substantially* related to the subject matter of this suit.

The defendants have perfected this interlocutory appeal from the district court's denial of the disqualification motions.

The issues presented are: (1) What is the proper standard for appellate review of orders on disqualification motions; (2) whether the subject matters in the two representations in the case at bar are substantially related; and (3) whether the presumptions of access to confidential information should be given conclusive status.

## I—STANDARD FOR APPELLATE REVIEW

Plaintiff asserts that the proper standard for appellate review of a district court's decision on attorney disqualification is whether the appellant can establish an abuse of discretion by the trial court. Defendants argue that a strict abuse of discretion standard is inappropriate where the district court has applied the wrong rule of law.

The ends of the spectrum between a strict or liberal standard are represented by two cases—the most stringent viewpoint is exemplified in *Gas-A-Tron of Arizona v. Union Oil Company of California*, 534 F.2d 1322, 1325 (9th Cir. 1976), where the court stated that it would not disturb the district court's exercise of its discretion in fulfilling the responsibility of controlling the conduct of lawyers practicing before it, if the record reveals any sound basis for its discretion in disqualifying or refusing to disqualify a lawyer.[1]

In *Aetna Casualty and Surety Company et al. v. United States*, 570 F.2d 1197 (4th Cir. 1978), the Fourth Circuit took a more lenient view of an appellate court's scope of review:

Turning to the merits of the appeal, the plaintiffs contend that the scope of our review is limited to a determination of whether the district court abused its permissible discretion. While some of the cases support the position of the plaintiffs on this point, more recently the courts have expressed serious reservations about whether the limited abuse of discretion standard is appropriate in disqualification cases where only a purely legal question is at issue. *Woods v. Covington Cty. Bank*, 537 F.2d 804 (5 Cir. 1976); *Kroungold v. Triester*, 521 F.2d 763, 765, n.2 (3 Cir. 1975); *American Roller Company v. Budinger*, 513 F.2d 982, 985, n.3 (3 Cir. 1975). We are inclined to agree with the Fifth Circuit that "[i]n disqualification cases such as this, where the facts are not in dispute, District Courts enjoy no particular functional advantage over appellate courts in their formulation and application of ethical norms," and that it is appropriate for us "to determine whether the District Court's disqualification order was predicated upon a proper understanding of applicable ethical principles." (Footnotes omitted.)

570 F.2d 1197, 1200.

In our own Circuit, there are four recent cases that have involved the disqualification question, *Cannon v. U. S. Acoustics Corp.*, 398 F.Supp. 209 (N.D.Ill.1975) adopted and affirmed, 532 F.2d 1118 (7th Cir. 1976); *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir. 1976); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978); and *Westinghouse Electric Corp. v. Gulf Oil Corp. and United Nuclear Corp.*, 588 F.2d 221 (7th Cir. 1978); but no case has clearly addressed the scope of appellate review. This court has

---

1. The *Gas-A-Tron* court nevertheless reversed a district court disqualification order in that *un*controverted testimony showed that the disqualified lawyer had not actually obtained any confidential information relevant to the pending litigation, and, more importantly, that he had not worked on matters that were substantially related to the pending litigation.

relied on the broad discretion of the district court in refusing to disturb a disqualification order, e. g., *Schloetter, supra,* but we have not allowed a strict standard of review to prevent reversal when the district court predicated its disqualification ruling on a misunderstanding of the law, e. g., *Gulf Oil, supra.* This court agrees in general with the Fourth Circuit in *Aetna Casualty, supra.* In the case at bar, the district court did not hold an evidentiary hearing on the disqualification motions, and all testimony comes via affidavits. Under such circumstances, district courts enjoy no particular advantage over appellate courts in their formulation of ethical norms. *See Thompson v. United States,* 477 F.2d 164, 167 (7th Cir. 1973).

## II—SUBSTANTIAL RELATIONSHIP TEST

We find that the subject matter of the two representations are substantially related and that the district court erred in its holding that the prior services rendered by Cook (as a member of the Hume firm) must not only be related, but must also be substantial in a quantitative sense. The district court calculated that the services arguably related to the patents at issue constituted only two percent of the total representation of Baxter by the Hume firm, and therefore held that the services, even though arguably related, were not *substantially* related.

This transformation of the substantial relationship test to merely a mathematical evaluation cannot be permitted. A confidence can be revealed on a related subject matter in a brief moment and without the client being charged a nickel. *See Kerr-McGee, supra.* It is true that the duration of time spent by an attorney on a particular matter may be a factor in considering disqualification,[2] but it should not be given the weight allowed by the court below.

In *Gulf Oil, supra,* this court recently restated the substantial relationship test:

The substantial relationship rule embodies the substance of Canons 4 and 9 of the A.B.A. Code of Professional Responsibility. Canon 4 provides that "a lawyer should preserve the confidences and secrets of a client," and Canon 9 provides that "a lawyer should avoid even the appearance of professional impropriety." As a result it is clear that the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought. The rule thus does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other. The effect of the Canons is necessarily to restrict the inquiry to the possibility of disclosure; it is not appropriate for the court to inquire into whether actual confidences were disclosed.

The substantial relationship test is not a rule of substantive law but a measure of the quantum of evidence required for proof of the existence of the professional obligation. *Consolidated Theaters, Inc. v. Warner Bros. Circuit Management Corp.,* 216 F.2d 920, 924 (2d Cir. 1954). The evidence need only establish the scope of the legal representation and not the actual receipt of the allegedly relevant confidential information. Then only where it is clearly discernible, "that the issues involved in a current case do not relate to matters in which the attorney formerly represented the adverse party will the attorney's present representation be treated as measuring up to the standard of legal ethics." *Fleischer v. A. A. P., Inc.,* 163 F.Supp. 548, 553 (S.D.N.Y.1958). Doubts as to the existence of an asserted

---

2. *See* Judge Adams' concurring opinion in *Silver Chrysler Plymouth v. Chrysler Motors Corp.,* 518 F.2d 751, 760 (2d Cir. 1975).

conflict of interest should be resolved in favor of disqualification. *International Business Machines Corp. v. Levin,* 579 F.2d 271, 283 (3d Cir. 1978); *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975); *Chugach Electric Association v. United States District Court,* 370 F.2d 441, 444 (9th Cir. 1966), *cert. denied,* 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967).

In Judge Marshall's opinion in *Canon, [supra],* adopted and affirmed by us, he paraphrased the *T. C. Theatre [T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F.Supp. 265 (S.D.N.Y.1953)]* formulation that substantial relationship "is determined by asking whether it could reasonably be said that during the former representation that attorney might have acquired information related to the subject matter of the subsequent representation." 398 F.Supp. at 223. The opinion in *T. C. Theatre* continued "[i]f so, then the relationship between the two matters is sufficiently close to bring the later representation within the prohibition of . . . [the canons]". 113 F.Supp. at 269. Essentially then, disqualification questions require three levels of inquiry. Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

588 F.2d at 224.

Applying this three-part test to the case at bar:

(1) We find that the record adequately establishes a factual reconstruction of the scope of the prior representation. The 2¼ hours spent by Attorney Cook in July 1976 on the "Microbial Rennet" matter is the key

representation at issue. The 16 September 1977 affidavit of Attorney Cook states that the subject matter of the July 1976 representation is "identical to the subject matter of the present litigation." [3] The factual connection between the two matters is the enzyme "Microbial Rennet", in that Attorney Cook avers that this enzyme is identical to the enzyme accused of infringing the patents in the present litigation.

Plaintiff has voiced two arguments in support of the contention that the subject matter of the July 1976 services is not substantially related to the subject matter of the present litigation. (a) Plaintiff has vigorously argued the significance of an affidavit of Cook, made 19 May 1977, in support of a 1977 motion for an extension of time to answer the complaint filed in the present case. The affidavit states that Cook had neither consulted with experts nor studied the files necessary to answer the complaint. Plaintiff interprets the affidavit as an admission that the legal services performed by Cook in July 1976 were not substantially related to the issues of this case. We are not persuaded, and we believe that nothing further than that which appears on its face should be read into the 19 May 1977 affidavit, considering the type of motion it supports. (b) Plaintiff argues that the services rendered by Cook did not amount to representation as would require disqualification under the substantially related test, citing *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2d Cir. 1975). Plaintiff further contends that Cook was not heavily involved in the facts of the "Microbial Rennet" matter, and entered only briefly on the periphery and, therefore, that Cook's role cannot be considered "representation" that would require disqualification. Plaintiff argues that the record does not indicate that Cook advised Baxter on the validity of the patent at issue in the case at bar. We find plaintiff's

---

**3.** Defendants suggest that the purpose of this representation was to consider the possibility of initiating a declaratory judgment action (rather than wait for plaintiff to bring the present infringement action) regarding the

identical patents at issue in the case at bar. The plaintiff has not presented evidence that controverts the alleged purpose of the July 1976 representation.

arguments without merit. The central purpose of Canon 4 is to encourage the free transfer of confidential information from client to attorney, and this Canon comes into force regardless of whether an attorney has rendered legal advice. In *Westinghouse Elec. Corp. v. Kerr-McGee Corp., supra*, this court rejected a similar narrow viewpoint regarding whether a lawyer's fiduciary obligation has arisen. While we do not reject the *Chrysler* viewpoint that there are circumstances where an attorney can have only peripheral contact with the matter and, therefore, not be under a fiduciary obligation, we simply do not find that principle applicable to the case at bar.

(2) Applying the second prong of the test, we find that it is reasonable to infer that confidential information allegedly given to Cook would have been given to a lawyer under the circumstances occurring in July 1976. Cook's 16 September 1977 affidavit states that confidential information was received, and it is not necessary that an attorney divulge any confidences in order to prove they were revealed. The question of whether this presumption is rebuttable is addressed below.

(3) Applying the third prong, we have little trouble concluding that information regarding the enzyme labeled "Microbial Rennet" is relevant to the present patent infringement action that alleges improper use of patented milk-coagulating enzymes. Certainly information regarding the enzymes used by Baxter is potentially useful evidence in establishing patent infringement. "Relevance, . . ., must be measured against the potential avenues of proof and not against the expected." *Gulf Oil, supra*, 588 F.2d p. 226.

Application of the *Gulf Oil* factors to the case at bar leads us to the conclusion that the subject matter involved in the services rendered in July 1976 is substantially related to the subject matter of the case at bar. The *Schloetter* case requires that we now consider presumptions regarding the transfer of confidential information.

## III—PRESUMPTIONS OF ACCESS TO INFORMATION

There are two presumptions that must be addressed: (1) whether confidences were transferred from Baxter employees to Cook, and (2) whether confidential information is imputed to other members of the Hume firm.

In *Schloetter*, this court made a two-level decision regarding these presumptions. The facts of that case are slightly reversed from those of the case at bar, in that a plaintiff in a re-issue patent infringement action sought to have defense counsel disqualified because a member of the defense firm had once performed services for the plaintiff in prosecuting the original patent application. The lower court disqualified the defense firm and this court approved. The presumptions we are now faced with were addressed in *Schloetter*, i. e., with respect to the individual attorney and client, if the subject matter of the two representations are substantially related, the "court, . . . , makes no inquiry into whether confidential information relating to the matter involved in the subsequent representation did in fact pass to the attorney during the course of his former representation, his possession of such information will be presumed." *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., supra*, (emphasis added), this language clearly contemplates an irrebuttable presumption. However, we are aware that this question is not settled. In *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 741 (2d Cir. 1978), this question of rebuttable/irrebuttable presumption was addressed by Judge Mansfield in his concurring opinion: "However, I am reluctant to endorse the district court's unqualified statement to the effect that once a substantial relationship is shown between the subject matters of the two representations and that the lawyer's personal role in the former representation was more than peripheral, the presumption that the attorney had access to confidential information is 'irrebuttable', . . . ." Judge Mansfield then cited the *Chrysler*

case[4] to support his belief that the presumption should be rebuttable. The quoted portion from *Chrysler* in turn cites *Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures*, 224 F.2d 824 (2d Cir. 1955), *cert. denied* 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956). We believe Judge Mansfield has taken language from *Chrysler* and *Laskey* out of context.[5] As Judge Mansfield's opinion reads, one would think that the *Laskey* case stands for the proposition that even though a substantial relationship has been found, the presumption of access to confidential information is rebuttable. We believe that the *Laskey* court intended the opposite to be true: "Once the partnership is dissolved, however, the inference from access to receipt of information, in a new case *having no relationship* to the old partnership, becomes logically less compelling and should therefore become rebuttable legally, lest the chain of disqualification becomes endless." 224 F.2d 824, 827 (emphasis added). Once the court made it clear it was talking about matters not substantially related, it went on to make the statement quoted by Judge Mansfield.[6]

We do not find that *Laskey* or *United States v. Standard Oil Co.*, 136 F.Supp. 345 (S.D.N.Y.1955), (cited in *Chrysler, supra*),

detract from the proposition that once a substantial relationship is found, it will be irrebuttably presumed that the attorney had access to confidential information. *See Gulf Oil, supra*, 588 F.2d at 224.

With respect to the second level of presumption (the imputation of knowledge to other members of the firm) we again turn to *Schloetter*. The question of whether this presumption is rebuttable was never clearly answered by this court in *Schloetter* because we found that the district court's decision supported the ban in Canon 9 on the appearance of impropriety, particularly when the subject matters involved in the former and present representations are so closely related [patents]. 546 F.2d 706, 710, 711.[7]

In the case at bar, because we have already found the matters to be substantially related, we will follow the direction of Canon 9, which means that actual receipt of confidential information by other members of the Hume firm is irrelevant.

Moreover, the conflicting affidavits presented by Cook and his former associates merely create a doubt as to the existence of the asserted conflict of interest, and this doubt should be resolved in favor of disqualification.[8] *International Business Ma-*

---

**4.** The *Chrysler* court quoted a passage from *Laskey* at a point where it was addressing a situation involving no substantial relationship, as opposed to Judge Mansfield's discussion of a situation involving substantially related matters.

**5.** The quoted portion of *Laskey* deals with what we have characterized as the second level inquiry, i. e., whether confidential information can be imputed to other members of an attorney's firm. Nevertheless, it has been used in discussing whether the actual attorney can be conclusively held to have had access to confidential information.

**6.** "It will not do to make the presumption of confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high. This is particularly true where, as here, the attorney must prove a negative, which is always a difficult burden to meet." 224 F.2d at 827; 569 F.2d 737, 741.

**7.** Likewise, as discussed earlier, in *Laskey* the court addressed the situation where a law partnership has been totally dissolved. In the case

at bar, Cook has apparently made a complete split with the Hume firm. The *Laskey* court stated that once the partnership is dissolved, the inference (that knowledge is imputed to other members of the firm) becomes rebuttable when a new case arises that has no relationship to the old partnership. This implies that if a subsequent case is substantially related, the inference remains irrebuttable.

**8.** Judge Fairchild, in his dissent, is of the opinion that Attorney Cook did not allege, even in general terms, that any confidences were shared or exist. We read Paragraphs 5 and 9 of the Cook affidavit in a different light. In addition, at oral argument, Judge Cummings asked counsel for Baxter to explain the affidavits of the members of the present Hume firm, in which it is alleged that the "Microbial Rennet" matter was never discussed with Cook. Counsel responded that the affidavits are in factual dispute. Although further questioning by Judge Fairchild revealed that there was no specific allegation in the Cook affidavit that confidences received in the 2¼ hours were shared, we find enough of a doubt to resolve the question in favor of disqualification.

chines Corp. v. Levin, 579 F.2d 271, 283 (3d Cir. 1978); Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975); Chugach Electric Association v. United States District Court, 370 F.2d 441, 444 (9th Cir. 1966), cert. denied 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967); Gulf Oil, supra 588 F.2d at 224.

Finally, we wish to retreat slightly from the appearance that we have encouraged inflexible irrebuttable presumptions that could possibly lead to unreasonable results under unforeseen circumstances. These presumptions are designed to promote the Code of Professional Responsibility, yet all courts should keep in mind a reasonable balance between a client's right to his own freely chosen counsel and the need to maintain the highest ethical standards. Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973).[9] In the case at bar, we believe that the proper balance has been maintained by our decision.

The district court is REVERSED and the motion of defendant Baxter to disqualify the Hume firm is GRANTED.

FAIRCHILD, Chief Judge, dissenting.

Although I agree with much of the majority opinion, my disagreement with one aspect of the opinion causes me to reach a different conclusion.

Regardless of whether or not, in the usual case, we should defer to the district court's exercise of discretion in matters concerning attorney disqualification, I agree that in this case the district court judge erred in his application of the "substantially related" test. I further agree that the 2¼ hours spent by Attorney Cook, while a member of the Hume firm, on the "microbial rennet" matter for Defendant Baxter were substantially related to the subject matter of the present litigation and that it is appropriate to presume that he received confidences in connection with that work. I do not agree, however, that these facts preclude the Hume firm, which Cook has now left, from representing the plaintiff, Novo, in this action.

It is important, at the outset, to make clear what the case is not. This is not a case where a party's former attorney is now representing the adverse party. The relevant part of Baxter's work with the Hume firm was handled by Granger Cook, the attorney of its choice. Baxter's work is still handled by Granger Cook. Granger Cook undoubtedly gained confidences from Baxter; there is no danger that he will now reveal those confidences to an adversary of Baxter's. His loyalty to his client is not questioned in this matter.

What is questioned here is whether Cook's former associates must now be barred from representing Baxter's adversary, Novo, because of their association with Cook during the 2¼ hours he spent on a substantially related matter for Baxter. He may possibly have shared confidences he gained in those 2¼ hours with the other members of the law firm, and I can agree with the policy choice to impose a presumption that he did so. I disagree, however, with the majority's conclusion that the presumption is an irrebuttable one.

Although the majority characterizes affidavits on the two sides as conflicting, such is not the case. The carefully-worded affidavit of Mr. Cook, who of course was in a position to know exactly what, if any, confidences were shared, never asserts that confidences relating to the "microbial rennet" work were shared with other members of the firm. In contrast, the affidavits of all the remaining members of the Hume firm positively assert that the remaining members of the firm never discussed the microbial rennet work with Cook or anyone else in the firm and did not work on the subject themselves. The appellant's brief implicitly acknowledges that there is no conflict in the affidavits, asserting instead that the Hume firm affidavits are an attempt to "rebutt [sic] the rule of law that all confidences possessed by one partner must be imputed to all other partners." Appellant's Reply Brief at 6. In the case of Silver

---

**9.** See also Gruenberg, Ethical Considerations when an Attorney Opposes a former Client: The Need for a Realistic Application of Canon Nine, 52 Chicago-Kent L.Rev. 525 (1975).

*Chrysler Plymouth, Inc. v. Chrysler Motor Corp.*, 518 F.2d 751 (2d Cir. 1975) the Second Circuit observed that

> "[the party seeking disqualification] was here in a position conclusively to refute [the opposing attorney's] position that his role in these cases had been non-existent or fleeting. . . . [T]he issue was capable of proof. [The party seeking disqualification] instead chose to approach the matter in largely conclusory terms." *Id.* at 757.

There is even less doubt in this case since Cook does not allege even in conclusory terms that relevant confidences were shared. The majority's decision, then, must rest entirely on a holding that the presumption of shared confidences is irrebuttable.

The majority acknowledges that this circuit has never held the presumption that confidences were shared with other members of the firm to be irrebuttable (opinion at ——). But the majority now holds that Canon 9 requires this result. Canon 9, of course, cautions that "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." By its very nature the Canon requires a careful analysis of the circumstances of each individual case. As the Second Circuit noted

> "When dealing with ethical principles, it is apparent that we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent." *Silver Chrysler Plymouth v. Chrysler Motor Corp.*, 518 F.2d 751, 753, n. 3 (2nd Cir. 1975) quoting *United States v. Standard Oil Company*, 136 F.Supp. 345, 367 (S.D.N.Y.1955).

1. This appeal was originally decided by a three-judge panel, *ante,* page 186. Rehearing *en banc* was granted on April 13, 1979.

2. The corporations listed as defendants-appellants have the following relationship: The original corporation involved was Baxter Laboratories (Baxter). Baxter Travenol Laboratories is its successor in interest and Travenol Laboratories is a wholly-owned subsidiary. Baxter Tra-

There may be cases in which Canon 9 would render inquiry into the fact of shared confidences unseemly. But here, where the party seeking disqualification is in a position to know exactly what confidences were shared and what conflicts there may be and yet fails to allege, even in general terms, that any were shared or exist, it is appropriate to consider the presumption a rebuttable one. On the record before us it has clearly been rebutted. I would not deny Novo the counsel of its choice and would affirm the decision of the district court.

## ON PETITION FOR REHEARING EN BANC

### OPINIONS FILED AUGUST 16, 1979

Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, TONE, BAUER, and WOOD, Circuit Judges.

FAIRCHILD, Chief Judge.

This appeal deals with one of the questions that may arise when a partner leaves a law firm taking a client of the firm with him, and then finds himself and his client in litigation against a party now represented by his former firm. On the facts of this case, we affirm the district court's denial of a motion to disqualify the former firm.[1]

Prior to December, 1976 Granger Cook, Jr. was a member of the Chicago law firm of Hume, Clement, Brinks, Willian, Olds & Cook, Ltd. (the Hume firm). During that time Baxter Laboratories was a client of the firm with Mr. Cook in charge of the account. When Cook left the Hume firm December 31, 1976, he took the Baxter account with him and he now represents Baxter and the other defendants in this litigation.[2]

venol Laboratories had an operation called the Wallerstein Division. On July 11, 1977, Gist-Brocades Fermentation Industries, Inc., and Gist-Brocades, N. V., acquired Wallerstein from Baxter and agreed to indemnify Baxter with respect to this patent litigation, because it was allegedly the Wallerstein Division that was infringing the patent owned by plaintiff-appellee (Novo).

The controversy between the parties dates back to 1966–67 when both filed patent applications for a milk-coagulating enzyme. A patent interference was declared in 1971, which was finally resolved in favor of the plaintiff (Novo) in February, 1976. Although the Hume firm was outside patent counsel for Baxter during this time, the firm did not represent Baxter in the patent interference proceeding. During July of 1976, however, Cook, then a partner in the Hume firm, spent two and one-fourth hours reviewing legal authorities and conferring with Baxter attorneys in connection with a matter identified as "microbial rennet." These conferences are the focus of defendants' contentions that the Hume firm must be disqualified.

Granger Cook left the Hume firm in December, 1976. In February, 1977 the plaintiff filed this action in the United States District Court for the District of South Carolina, charging Baxter with patent infringement. In August, 1977, after the action had been transferred to the Northern District of Illinois, the Hume firm filed a motion to appear as counsel for Plaintiff Novo. The Baxter defendants opposed the appearance and filed a motion to disqualify the firm after the appearance was entered. The motion was denied in December, 1977 and this appeal followed.

*THE SUBSTANTIAL RELATIONSHIP TEST*

The district court correctly concluded that the starting point for the inquiry is whether the representation of Baxter by the Hume firm was substantially related to the present litigation. *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir. 1976); *Westinghouse Electric Corp. v. Gulf Oil Corp. and United Nuclear Corp.*, 588 F.2d 221 (7th Cir. 1976). As we noted in *Gulf Oil, supra* :

> The substantial relationship rule embodies the substance of Canons 4 and 9 of the A.B.A. Code of Professional Responsibility. Canon 4 provides that 'a lawyer should preserve the confidences and secrets of a client,' and Canon 9 provides that 'a lawyer should avoid even the appearance of professional impropriety.' As a result it is clear that the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought. 588 F.2d 224.

The district court concluded that there was no substantial relationship between the services rendered by the Hume firm to Baxter and the present litigation because the July, 1976 services that were arguably related were only two percent of the total representation provided Baxter by the Hume firm and were rendered under the direction of Granger Cook. The district court held, therefore, that the relationship, if any, was not "substantial."

■ This quantitative analysis, however, involves misapprehension of the nature of the substantial relationship test. Even the briefest conversation between a lawyer and a client can result in the disclosure of confidences. It is the relationship between the prior representation and the present litigation that must be evaluated rather than simply the duration and extent of the past representation.

■ In this case we conclude that there was a substantial relationship between the July, 1976 representation and the present litigation. In *Gulf Oil, supra*, we suggested a three-part analysis, as follows:

> Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. 588 F.2d 225.

Applying this three-part test to the case at bar: (1) We find that the record adequately establishes a factual reconstruction

of the scope of the prior representation. The two and one-fourth hours spent by Attorney Cook in July, 1976 on the "microbial rennet" matter is the key representation at issue. The September 16, 1977 affidavit of Attorney Cook states that the subject matter of the July, 1976 representation is "identical to the subject matter of the present litigation."[3] The actual connection between the two matters is the enzyme "microbial rennet," in that Attorney Cook avers that this enzyme is identical to the enzyme accused of infringing the patents in the present litigation. (2) Applying the second prong of the test, we find that it is reasonable to infer that confidential information of the type allegedly given to Cook would have been given to a lawyer under the circumstances occurring in July, 1976. Cook's September 16, 1977 affidavit states that confidential information was received, and it is not necessary that an attorney or party divulge any confidences in order to prove they were revealed. (3) Applying the third prong, we have little trouble concluding that information regarding the enzyme labeled "microbial rennet" is relevant to the present patent infringement action that alleges use of patented milk-coagulating enzymes. Certainly information regarding the enzymes used by Baxter is potentially useful evidence in establishing patent validity or infringement. "Relevance . . . must be measured against the potential avenues of proof and not against the expected." *Gulf Oil, supra*, at 226.

## THE DISQUALIFICATION OF COUNSEL

Having concluded that the July, 1976 services were substantially related to the

case at bar, we must now consider to what extent that conclusion requires the disqualification of the Hume firm. Implicit in the substantial relationship test is a presumption that an attorney who worked on a substantially related matter received confidences in connection therewith. *Gulf Oil, supra*, at 225–26. In this case, Granger Cook has alleged that he did receive such confidences. If Cook were now seeking to represent the Plaintiff Novo, there is little doubt that a motion by Baxter to disqualify him would be granted. *Schloetter v. Railoc*, 546 F.2d 706, 710 (1976).

But of course in this case it is not Attorney Cook who is seeking to represent Novo. Cook, who is still counsel for Baxter, is seeking instead to disqualify his former firm from representing Novo. We must therefore consider to what extent the confidential information presumably received by Cook must be imputed to other members of the Hume firm.[4]

It is reasonable to presume that members of a law firm freely share their client's confidences with one another. That presumption of shared confidences underlies, either implicitly or explicitly, many of the cases requiring the disqualification of counsel. *Laskey Bros. v. Warner Bros. Pictures, Inc.*, 224 F.2d 824, 826 (2nd Cir.), *cert. denied* 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956); *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir. 1976); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1321 (7th Cir. 1978). The application of the presumption recognizes not only the realities of law practice but also the ethical considerations of Canon 9: "A lawyer should avoid even the appear-

---

3. Defendants suggest that the purpose of this representation was to consider the possibility of initiating a declaratory judgment action (rather than wait for plaintiff to bring the present infringement action) regarding the identical patents at issue in the case at bar.

4. Because the conclusions we reach in this case may not have a factual basis in every other case, it is important to note the following: (1) While Cook's affidavit states that he conferred generally with other members of the Hume firm about the Baxter account, and that other members of the firm received confidential in-

formation about Baxter, there is no allegation that the July, 1976 representations (which are discussed separately in the affidavit) were ever discussed with anyone else in the firm. Cook, of course, is in a position to know whether confidences were shared since it was he who presumably received those confidences and who would have shared them if they had been shared. (2) There are affidavits in the record from all of the remaining members of the Hume firm stating that none of them had any knowledge of the July, 1976 representations.

ance of impropriety." We will at least begin by presuming that Granger Cook shared with his associates at the Hume firm whatever confidences he may have received from Baxter in connection with the July, 1976 "microbial rennet" work.

The more difficult question is whether it is appropriate for the court to inquire further, *i. e.*, whether or not the presumption should be a rebuttable one. There are often good reasons for making a presumption of shared confidences irrebuttable. We generally do so at the first level (the presumption that confidences have been shared by a client in a substantially related matter) in order to avoid any unseemly inquiry into the actual details of conversations between client and counsel. *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 224, n.3 (7th Cir. 1978). *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2nd Cir. 1973). In that situation, and no doubt in others, an irrebuttable presumption may also be required by the spirit of Canon 9—in order to avoid even the appearance of impropriety. On the other hand, a rote reliance on irrebuttable presumptions may deny the courts the flexibility needed to reach a just and sensible ruling on ethical matters. As the Second Circuit has noted:

> When dealing with ethical principles, it is apparent that we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.

*Silver Chrysler Plymouth v. Chrysler Motors Corp.*, 518 F.2d 751, 753, n.3 (2d Cir. 1975), quoting *United States v. Standard Oil Company*, 136 F.Supp. 345, 367 (S.D. N.Y.1955).

The circumstances of this case demonstrate that the presumption that Cook shared confidences with his associates at the Hume firm need not be irrebuttable. Cook and his client, Baxter, are not in an adversary relationship here. There is no reason to expect that Cook is not acting completely in his clients' interest. Additionally, since it was Cook who presumably received Baxter's confidences, he is in a position to know exactly what confidences he may have shared with others in his firm. His failure to allege, even in general terms, that he shared confidences received in connection with the "microbial rennet" matter with other members of the Hume firm is therefore very significant. Although the client, Baxter, would be entitled to the benefit of the presumption that Cook did so, and to the resolution of any doubts in Baxter's favor (*Gulf Oil, supra,* at 225), we do not find it necessary to exclude from consideration evidence clearly showing otherwise.

██ In this case the evidence is not in conflict. Cook does not allege that he shared any of Baxter's confidences in connection with the "microbial rennet" matter with others in the Hume firm. All of the remaining members of the Hume firm have submitted affidavits stating that they did not receive any such information from Cook. The presumption has been clearly and effectively rebutted. Because the facts are clear, we need not, in this case, decide whether some special quality or quantity of proof is required to rebut the presumption. Canon 9 does not require the courts to deny Novo the counsel of its choice. The order of the district court is therefore AFFIRMED.

SWYGERT, CUMMINGS, and SPRECHER, Circuit Judges, dissent for the reasons given by the majority in the panel opinion, 607 F.2d 186.

SWYGERT, Circuit Judge, dissenting.

Perhaps nothing need be added to Judge Grant's excellent analysis in the panel opinion of the issue presented in this case. There is, however, one aspect that I believe needs emphasis. Policy considerations require the erection of an irrebuttable presumption in a situation like this. Once the sharing of a relevant confidence is presumed, that presumption ought not be the subject of rebuttal. To allow rebuttal is to invite casuistry and, even worse, a swearing

contest. Courts should keep out of that thicket. The overall policy of maintaining the vitality of Canons 4 and 9 and discouraging "subtle" but enervating interpretations of these Canons demands nothing less.

This case is an example of how we lawyers and judges can fall into the error of making fine distinctions and forging legal niceties all in the interest of "doing justice," thus finding ourselves focused on the trees but forgetful about the importance of the forest.