MONON CORPORATION, Plaintiff,

v.

WABASH NATIONAL CORPORATION, Defendant.

Civ. A. No. L90–00044.

United States District Court,
N.D. Indiana,
Lafayette Division.

Feb. 11, 1991.

David Rosenthal, Lafayette, Ind., Stephen R. Patton, David L. Witcoff, Mark K. Suri, Kirkland & Ellis, Chicago, Ill., for plaintiff.

Robert L. Bauman, Lafayette, Ind., Phillip L. Cohan, Glen K. Allen, Francis B. Burch, Jr., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff, Monon Corporation, ("Monon") has moved this court to disqualify defendant's counsel, the law firm of Trexler, Bushnell, Giangiorgi & Blackstone, Ltd. ("Trexler Bushnell"). A hearing was held in open court in Lafayette, Indiana on December 21, 1990 in which both parties summarized their respective positions on this matter.

## I.

### Facts

The merits of this case involve Plaintiff's claim that Defendant ("Wabash") is infringing Plaintiff's patent on a plate trailer. Before this court can ever address the similarities of the two parties' products, however, it must wade through the similarities of the parties themselves.

In the mid–1960s, Mr. Donald J. Ehrlich was president of Monon Trailer, Inc., whose intellectual property work was done by Attorney Richard Bushnell. Monon Trailer, Inc. was purchased by Evans Products, Inc. in the mid–1970s and became a division of Evans Transportation. Mr. Ehrlich remained with the company; Mr. Bushnell's services were replaced by Evans in-house counsel.

Mr. Ehrlich then planned to buy Monon Trailer Division and, apparently with an eye toward his future business, retained Mr. Bushnell to prepare a patent application for a trailer invented by Mr. Rodney Ehrlich. Mr. Bushnell accomplished this before the anticipated purchase was complete, so he was advised by Donald J. Ehrlich to submit his bill to Monon Trailer Division. The patent application eventually was successful, but the purchase of Monon Trailer Division fell through. Instead, Mr. Ehrlich and several others formed Wabash National Corporation, with Donald J. Ehrlich as president and Rodney Ehrlich as director of engineering. Monon Trailer Division in time became Monon Corporation.

Upon learning of the new incorporations, Mr. Bushnell gave his file for Rodney Ehrlich's patent application to Monon's attorney, Henry Price. He informed Mr. Price that he intended to represent Donald J. Erhlich and Wabash National Corporation.

On February 27, 1990, United States Letters Patent No. 4,904,017, entitled "Trailer Construction", ("the '017 Patent"), was issued to Rodney Ehrlich, who assigned it to Monon Corporation.

## II.

### Legal Analysis

■ Canon 4 of the A.B.A.Code of Professional Responsibility provides that "a lawyer should preserve the confidences and secrets of a client." Canon 9 admonishes that "a lawyer should avoid even the appearance of professional impropriety." When deciding a question of attorney disqualification, federal courts embody the substance of these canons in the substantial relationship rule. *Novo Terapeutisk Laboratorium v. Baxter Travenol Laboratories, Inc.,* 607 F.2d 186 (7th Cir.1979). If two representations of two clients by one lawyer or firm are substantially related, professional impropriety will usually be found.[1] The first step in examining whether Trexler Bushnell's conduct justifies disqualification, therefore, is to determine just who the former client was. Trexler Bushnell claims to have worked on behalf of Rodney Ehrlich and Donald J. Ehrlich and the latter's future company when it prepared and filed the application for what became the '017 patent. The facts, even as presented by Trexler Bushnell, belie this. Donald J. Ehrlich, who asked Mr. Bushnell to prepare the patent application, was still an officer of Monon Trailer Division when he did so. Rodney Ehrlich was still an employee of Monon. Arguably, neither was acting in the scope of his employment when they conferred with Mr. Bushnell; however, Monon paid the bill. Rodney Ehrlich assigned his rights to Monon on January 23, 1985, *before* Trexler Bushnell filed the patent application in the Patent and Trademark Office. The instrument of assignment expressly states that the assignor agrees to "assist said ASSIGNEE in the prosecution of the application herein identified..." Rodney Ehrlich apparently never intended to exploit the patent himself, and the language of the assignment agreement indicates that Monon, not Rodney Ehrlich or Donald J. Ehrlich, was prosecuting the patent. This court finds, therefore, that

Monon Trailer Division was Trexler Bushnell's client.

An issue of plaintiff Monon Corporation's status as a successor in interest to Monon Trailer Division of Evans Corporation has been raised. This court has been furnished with documents pertaining to the merger of Monon Holding Co. into Monon Corporation and the assignment of patent rights to Monon Corporation and finds that the plaintiff Monon is a mere continuation of Monon Trailer Division. *See Upholsterer's International Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323 (7th Cir.1990).

■ The court must now turn to the question of whether Trexler Bushnell's past representation of Monon is substantially related to its current representation of Wabash. This circuit uses a three-part test for finding a substantial relationship. First, the trial court must make a factual reconstruction of the scope of the prior representation. Next, the court determines whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally comes a determination whether that information is relevant to the issues raised in the litigation pending against the former client. *Novo Terapeutisk, supra.*

Applying the above test to the facts at hand, this court finds that the scope of the prior representation entailed Trexler Bushnell's working with the inventor to prepare a patent application, and then filing the patent application in the United States Patent and Trademark Office with Trexler Bushnell as counsel of record. The representation ended before the prosecution of the '017 patent was completed.

Monon has not pointed out specific confidential information Trexler Bushnell possesses, other than Mr. Bushnell's knowledge of the '017 patent generally. How-

---

**1.** Rule 1.9 of the Indiana Rules of Professional Conduct expressly calls for the same test. "A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the client consents after consultation."

ever, this court finds it reasonable to infer that information concerning the patent at issue, including the technical aspects of the invention and possibly business concerns relevant to its use, would have been given to a lawyer in Attorney Bushnell's position.

Whether the confidential information that Monon allegedly shared with Trexler Bushnell is relevant to the issues raised in this litigation against it is a simple determination in this case, given that the subject matter is the very same patent.[2]

■ Trexler Bushnell's prior representation of Monon and its present representation of Wabash are therefore substantially related. Once a substantial relationship has been found, it is irrebuttably presumed that counsel had access to confidential information. *Novo Terapeutisk, supra; Schloetter v. Railoc of Indiana,* 546 F.2d 706 (7th Cir.1976). Counsel which had access to confidential information of a former client cannot be allowed to represent another client adversely without the former client's consent.[3]

■ Canon 9 admonishes that a lawyer must avoid even the appearance of impropriety. A simplistic view of this situation is that Trexler Bushnell obtained a patent for one party and now attempts to deny the same patent for the other party. A more careful examination of the facts and consideration of the technicalities still makes clear that Attorney Bushnell, at the very least, made initial determinations that Rodney Ehrlich's invention was patentable and then drafted claims for a patent application designed to convince the PTO that the invention was patentable. Now the same lawyer goes so far as to claim that the same invention lacks the conditions of pat-

entability. No matter who the clients were or are; no matter what confidential information is possessed by whom, this simple circumstance gives "an unsavory appearance of conflict of interest that is difficult to dispel in the eyes of the lay public—or for that matter the bench and bar ..." *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1269 (7th Cir.1983). This court believes that the appearance of impropriety must be avoided by disqualifying Attorney Bushnell and Trexler Bushnell from representation of Wabash in this matter.

Trexler Bushnell here argues for a waiver. Such a waiver is far too slender a reed given the fundamentally important professional ethical values that inhere in this circumstance. Given the extensive involvement of Mr. Bushnell here the tactic of building a so called "Chinese wall" emphasized in *Analytica, supra* at 1270–1280 would simply not work.

■ When considering an issue of disqualifying a party's counsel, a court must recognize and attempt to preserve a balance between the right to confidentiality and the prerogative of a party to choose its counsel. *Novo Terapeutisk, supra, Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564 (Fed.Cir.1984). "The results as well as the language in recent cases indicate that the Seventh Circuit considers the right of a party to select counsel of his choice to be a matter of significant importance, which will not be disturbed unless a specifically identifiable impropriety *has occurred.*" (emphasis supplied) 744 F.2d at 1576. The *Panduit* court was primarily concerned with imputing knowledge of confidential information held by an attorney to a law firm he had joined. Its fear was

---

**2.** Trexler Bushnell has contended that the completed '017 patent is *not* the same as the patent application which was originally filed with the PTO. This argument is not persuasive. While this court is aware that patent applications are frequently modified in the course of prosecution, for various reasons, it is still reasonable to infer that counsel would be given all of the relevant information from the outset, and that any differences between the application initially filed and the application in its final form did not stem from new information which Mr. Bushnell did not have.

**3.** Trexler Bushnell argues that any information it may have from Monon cannot be confidential; everything it knows is now part of a patent, which is a public record. This contention is answered by Professor Drinker: "[privelege] is not nullified by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources." Drinker, H., Legal Ethics 135 (1953).

disqualifying attorneys who had no realistic connection with confidential information. The situation presented to this court involves no such dangers. This court recognizes that Trexler Bushnell has been the intellectual property firm chosen by Donald J. Ehrlich for many years. However, Attorney Bushnell has himself stated that he is in no better position to evaluate the '017 patent than any other lawyer. Further, Wabash has two additional law firms of record. The prejudice imposed upon Wabash by disqualifying Trexler Bushnell from representing it in this civil action does not justify forsaking Monon's interests in its confidential information or the legal profession's interest in appearances of propriety.

The law firm of Trexler, Bushnell, Giangiorgi & Blackstone, Ltd. is disqualified from the representation of Defendant Wabash National Corporation in this civil action.

Here, Monon seeks counsel fees and costs against Wabash and/or Trexler Bushnell. This court has revisited the brief summary ending comment in *Analytica* at page 1270 regarding the award of fees and expenses on the basis of bad faith. There was also reference to stubbornness in resisting disqualification. Certainly, Trexler Bushnell was stubborn here, but such does not automatically extrapolate into bad faith. There, Judge Grady specifically found bad faith. Here, this judge makes a full and careful examination of all the relevant circumstances and declines to find the element of bad faith. Plaintiff's request is therefore denied. IT IS SO ORDERED.