Laura SELBY, Plaintiff,

v.

**REVLON CONSUMER PRODUCTS CORP., et al., Defendants.**

No. 3–96–CV–2864–D.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 17, 1997.

Kurt Compton Banowsky, Janestte Johnson & Associates, Dallas, TX, for Laura Selby.

Robert Elwood Sheeder, Carol Ann Darling, Jenkens & Gilchrist, Dallas, TX, for Revlon Consumer Products Corp., Revlon Commissary Sales, Inc.

James Alan Mask, Jenkins Watkins & Mask, Dallas, TX, for Sara Young.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Defendant Revlon Consumer Products Corporation and third-party movant Sara Young have filed separate motions to quash and for protective order. For the reasons stated herein, the motions are granted.

### I.

Laura Selby worked for Revlon Consumer Products as an account executive in the Department Store Group. Sara Young was her immediate supervisor. Both women retained Kurt C. Banowsky and the law firm of Janette Johnson & Associates to represent them in a sexual harassment case against the company. Banowsky sent a demand letter to Revlon on behalf of Selby on February 22, 1996. A similar letter was sent on behalf of Young four days later.[1] Their allegations focus on the conduct of two high ranking employees—Marion Kaprowski and Lee Davis. Succinctly stated, Selby and Young contend that they were repeatedly subjected to sexually-related comments and overtures in the workplace and retaliated against when they reported this behavior to company officials.

Selby filed suit against Revlon on August 29, 1996. Young decided not to prosecute her claims and discharged Banowsky on November 30, 1996. Selby now wants to depose Young to prove that a hostile work environment existed at the company. Young and Revlon oppose this deposition. They argue

---

1. Both Selby and Young asserted claims for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act. Young also alleged age discrimination.

that Banowsky cannot depose Young because he is taking a position "adverse" to his former client in a "substantially related" matter. The parties have briefed their respective positions and presented oral argument at a hearing on August 29, 1997. This matter is now ripe for determination.

### II.

The question squarely presented is whether a lawyer can depose a former client who is a witness in a lawsuit related to the prior representation. This appears to be an issue of first impression. The Court therefore must look to "the ethical rules announced by the national profession in light of the public interest and the litigant's rights." *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir.1992), *quoting In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

■ The standards governing the conduct of attorneys in federal court are contained in the ABA Model Rules of Professional Conduct. *In re American Airlines*, 972 F.2d at 610; *Islander East Rental Program v. Ferguson*, 917 F.Supp. 504, 508 (S.D.Tex.1996). ABA Rule 1.9 provides, in relevant part:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

ABA MODEL RULES OF PROFESSIONAL CONDUCT, Rule 1.9(a) (1983). Most of the reported cases interpreting this rule involve situations where a lawyer sues a former client on behalf of a current client. *See, e.g. In re American Airlines*, 972 F.2d at 608; *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 160 (3d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); *GTE North, Inc. v. Apache Products Co.*, 914 F.Supp. 1575, 1577–78 (N.D.Ill.1996); *Bluebeard's Castle, Inc. v. Delmar Marketing, Inc.*, 886 F.Supp. 1204, 1206 (D.Vi.1995); *Amgen, Inc. v. Elanex Pharmaceuticals, Inc.*, 160 F.R.D. 134, 139 (W.D.Wash.1994);

*Monon Corp. v. Wabash National Corp.*, 764 F.Supp. 1320, 1321 (N.D.Ind.1991). However, the rule itself is not so limited. Rule 1.9 expressly forbids an attorney: (1) from appearing in a substantially related matter; (2) in which the interests of the current client are materially adverse to the former client; (3) unless the former client consents to the representation after consultation. *See In re American Airlines*, 972 F.2d at 615 & n. 2. These elements must be considered in determining whether a lawyer can depose his former client.

### A.

The Court must first determine whether there is a substantial relationship between the current representation of Linda Selby and the former representation of Sara Young. A substantial relationship may be found only after "the moving party delineates with specificity the subject matter, issues and causes of action common to the prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." *In re American Airlines*, 972 F.2d at 614, *quoting Duncan v. Merrill Lynch Pierce Fenner & Smith*, 646 F.2d 1020, 1029 (5th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

■ The substantial relationship test is easily satisfied in this case. Banowsky represented Selby and Young in a sexual harassment case against Revlon. Both women were employed at the same time in the same department. Their claims focus on the actions of two male supervisors. Many of the events described in their demand letters are identical. For example, Selby complained that she was required to assume additional job responsibilities because Marion Kaprowski was having an affair with a co-worker. Young claimed that this same relationship forced her to reassign duties previously held by the co-worker to Selby and other employees under her supervision. Revlon ultimately decided to transfer both women to Parlux Fragrances as part of a corporate merger and acquisition. Young and Selby maintained that they were expelled from the com-

pany in retaliation for reporting sexual misconduct in the workplace.

The Court concludes that the subject matter, issues, and causes of action in these two cases are not only similar, but virtually identical. Indeed, Banowsky conceded as much at the hearing. The Court must now consider whether the interests of Selby are materially adverse to Young.[2]

### B.

■ There is a paucity of authority interpreting the adversity requirement of ABA Rule 1.9.[3] The most instructive case comes from the Texas Supreme Court. In *National Medical Enterprises, Inc. v. Godbey*, 924 S.W.2d 123 (Tex.1996), a hospital administrator sought to disqualify his former attorney from representing a large number of patients in a fraud action against his company. Significantly, the administrator was not named as a party to the lawsuit. The trial court denied the motion because the current case, while substantially related to the prior representation, was not adverse to the former client. The supreme court disagreed. It held that "[a]dversity is a product of the likelihood of the risk and the seriousness of its consequences." *National Medical Enterprises*, 924 S.W.2d at 132. Applying this test to the facts before it, the court focused on the possibility that information developed during the course of the litigation might expose the administrator to criminal liability:

> The probability that [the former client] will be affected by the prosecution of the pending litigation is small, but it is not nonexistent ... The chances of being struck by lightning are slight, but not slight enough, given the consequences, to risk standing under a tree in a thunderstorm. [The former client] is not likely to be struck by lightning in the pending case, even though he is in the midst of a severe thunderstorm, but he is entitled to object to being forced by his former lawyer to stand under a tree while the storm rages on.

*National Medical Enterprises*, 924 S.W.2d at 133. The attorney and his law firm were both disqualified from representing the plaintiffs under the Texas disciplinary rules.[4]

At least one federal district court has reached the same result in an analogous case under the Illinois version of ABA Rule 1.9. In *Bobkoski v. Board of Education*, 1991 WL 61052 (N.D.Ill., April 12, 1991), two teachers sued the school board for age discrimination. One teacher, Barbara Jean Wiley, was represented by Lawrence Weiner. The other teacher, Patricia Bobkoski, hired another lawyer. Wiley settled her claim prior to trial and the school board promptly hired Weiner in the Bobkoski litigation. The district court disqualified Weiner because Wiley was a potential witness in the current case. The court summarily rejected as "absurd" the argument that Bobkoski's interests were not

2. Revlon argues that adversity is presumed if there is a substantial relationship between the current representation and former representation. It cites to *In re American Airlines* as authority for this proposition. In that, decision, the Fifth Circuit held that "[a] 'genuine threat' of *adverse use of confidences* is established by showing that a prior representation is substantially related to the present case." *In re American Airlines*, 972 F.2d at 615 (emphasis added). This is not the type of adversity contemplated by ABA Rule 1.9. The presumption of "adverse use of confidences" is different from the requirement that the *interests* of the current client be "adverse" to those of the former client. The argument advanced by Revlon would read the adversity requirement out of the rule. This Court is unwilling to do so.

3. The comments to ABA Rule 1.9 recognize that "[a]dversity may be a state that one knows when one sees, but it is not easily susceptible of a

concise legal formulation on the printed page." ABA MODEL RULES OF PROFESSIONAL CONDUCT, Rule 1.9 cmt. (1983).

4. The Texas Disciplinary Rules of Professional Conduct are patterned after the ABA Model Rules. Texas Rule 1.09 provides, in relevant part:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (2) if the representation in reasonable probability will involve [the use or disclosure of confidential information]; or
> (3) if it is the same or a substantially related matter.

TEX. DISC. R. PROF. CONDUCT 1.09(a), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1997).

adverse to those of Weiner's former client. *Bobkoski,* 1991 WL 61052 at *2.

The ABA Committee on Ethics also has adopted a strict definition of adversity where an attorney is confronted with a former client as a witness in a substantially related matter. The Committee noted that:

> [E]xamining one's own client as an adverse witness on behalf of another client, or conducting third party discovery of one client on behalf of another client, is likely (1) to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness ... [which is] likely to present a direct adverseness of interest.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92–367 (1992), *reprinted in* ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT at 1001:151 (1993). This is because a zealous advocate must necessarily challenge the credibility of an adverse witness.[5] The Committee concluded that the examination of a former client could proceed only if both clients consented after consultation.

Guided by these precedents, the Court finds that the interests of Young and Selby are materially adverse. Young does not want to be deposed because she "could be exposed to claims of negligent supervision, negligent retention and defamation." (Motion at 6). Although there is no legal or factual basis for a negligent supervision or negligent retention claim,[6] there is at least a plausible basis for a defamation claim if Young testifies about the alleged affair between Kaprowski and a co-worker. Banowsky maintains there is "virtually no risk of civil action" because Selby has renounced her

claims against Young and any defamation action is barred by limitations. These arguments are disingenuous at best. Selby is in no position to protect Young from potential lawsuits brought by other Revlon employees despite her characterization that such claims would be "tenuous." In addition, Texas has adopted the discovery rule in defamation cases. Young could still be sued if an aggrieved employee was unaware of the alleged defamatory remarks prior to her deposition. *See Farah v. Mafrige & Kormanik, P.C.,* 927 S.W.2d 663, 676 (Tex.App.—Houston [1st Dist.] 1996, no writ) (defamatory statements revealed during deposition taken four years later found actionable).

Moreover, the potential risks to Young are not limited by her exposure in subsequent litigation. Young testified that she also was concerned about her business reputation. She said that her current employer recently lost a $15 million sexual harassment case. Young was convinced that she would be fired if the company learned that she was involved in a similar case against Revlon. These are not inconsequential considerations and should factor into the risk analysis.

The Court finds that there is a slight risk to Young if the contemplated deposition goes forward. The possible consequences are not as severe as the potential criminal liability faced by the former client in *National Medical Enterprises,* but they are serious nonetheless. Accordingly, the Court holds that the deposition is adverse to Young's interests within the meaning of ABA Rule 1.9.

### C.

■ Banowsky also contends that Young consented to dual representation because she

---

5. Banowsky argues that he will not discredit Young if she testifies in this case. This bold assertion further illustrates the potential conflict between Young and Selby. A lawyer owes his current litigation client a duty of zealous advocacy. Banowsky cannot fulfill this duty if he has already committed himself to a particular view of Young's role in the underlying case. Indeed, an attorney "should not put himself in a position where, even unconsciously, he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92–367

(1992), *reprinted in* ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT at 1001: 151 (1993) (citations omitted).

6. Under Texas law, corporate employees are individually liable for their negligent acts only if they owe an independent duty of reasonable care separate from the duty owed by their employer. *See Leitch v. Hornsby,* 935 S.W.2d 114, 117 (Tex. 1996). The Court is unaware of any legal authority that imposes an independent duty on a supervisor to provide a workplace free from sexual harassment and retaliation.

knew that he represented Selby in a similar case. ABA Rule 1.9 expressly states that consent must be obtained "after consultation." ABA MODEL RULES OF PROFESSIONAL CONDUCT, Rule 1.9(a). There is no evidence that Banowsky consulted with Young about the "implications of the common representation and the advantages and risks involved." *See* MODEL RULES OF PROFESSIONAL CONDUCT, Rule 1.7(b)(2). The acquiescence of a client without informed consent is tantamount to no consent at all.

### III.

Finally, Banowsky argues that adequate precautions have been taken to prevent the accidental use of confidential information imparted during the attorney-client relationship. He states that the deposition will be taken by Janette Johnson "who had only tangential involvement with Young's prior representation." (Response at 9). Johnson plans to depose Young based on the pleadings, the deposition of Linda Selby, and "other information obtained outside of the attorney-client relationship with Young." (Response at 9).

 This argument fails for two reasons. First, there is an irrebuttable presumption that confidences obtained by an individual lawyer will be shared with other members of his firm. *In re American Airlines*, 972 F.2d at 614 n. 1; *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir.1981) This presumption bars Johnson—or any other lawyer in her firm—from taking Young's deposition. Second, the ethical obligations embodied in ABA Rule 1.9 go far beyond the preservation of client confidences. The rule also concerns the duty of loyalty to a former client. As the Fifth Circuit has recognized:

> Disqualification rules not only preserve the purity of particular trials but also unavoidably affect relationships among attorneys and clients in general. This court bars attorneys from appearing in substantially related matters not only to protect individual parties against the adverse use of information but also 'to aid the frank exchange between attorney and client.' ...
> The trust a lawyer's duty of loyalty in-

spires in clients encourages them freely to confide in the lawyer and freely to rely on the advice provided by the lawyer.

*In re American Airlines*, 972 F.2d at 619–20 (citations omitted).

Selby has a right to depose potential witnesses with knowledge of facts relevant to her case. This may include Sara Young. However, Young has a right to expect that her credibility and integrity will not be impugned by her former attorney in a substantially related matter. For these reasons, neither Kurt Banowsky nor anyone in his law firm are permitted to conduct this deposition.

The motions to quash and for protective order are granted.

SO ORDERED.