**In the Matter of CODESCO, INC., Debtor.**

**Bankruptcy No. 80 B 20283.**

United States Bankruptcy Court, S. D. New York.

April 1, 1982.

Thomas J. Cahill, New York City, trustee.

Anderson, Russell, Kill & Olick, P. C., New York City, for trustee.

Wexler, Weisman, Forman & Shapiro, P. C., Philadelphia, Pa., for PAC.

DECISION ON OBJECTIONS TO TRUS-
TEE'S APPLICATION TO RETAIN
LAW FIRM OF ANDERSON RUS-
SELL KILL AND OLICK, P. C. AS
HIS ATTORNEYS.

HOWARD SCHWARTZBERG, Bank-
ruptcy Judge.

PAC Finance Corporation ("PAC"), a
creditor holding a secured claim and the
largest unsecured claim in this case, which
was converted from Chapter 11 of the
Bankruptcy Code to Chapter 7, objects to
the trustee's application to retain as his
attorneys under a general retainer the law
firm of Anderson Russell Kill & Olick, P. C.
PAC raises the issue of "distinterest" and
questions whether or not attorneys who
represented the Creditors' Committee in the
aborted Chapter 11 case may be retained by
the trustee in the subsequent Chapter 7
case under the circumstances here involved.

PAC asserts that the Anderson firm be-
came closely familiar with the affairs of the
Creditors' Committee in the aborted Chap-
ter 11 case and was fully allied with its
interests. Therefore, PAC reasons that the
Anderson firm does not have the high de-
gree of impartiality and detached judgment
to be expected from attorneys employed by
the trustee in the administration of the
superseding Chapter 7 case. PAC contends
that the Anderson firm has an interest ma-
terially adverse to the interest of the debt-
or's estate and of other classes of creditors,
especially administration and priority credi-
tors. PAC alleges that the Anderson firm
has conflicting loyalties because the attor-
ney retained by the trustee in this case will
be required to challenge disputed claims
filed by unsecured creditors, including those
of members of the Creditors' Committee.
PAC also contends that the debtor's state-
ment of affairs reveals that there may have
been preferential transfers to members of
the Creditors' Committee for which the
trustee will have responsibility for recover-
ing. PAC notes that the Anderson firm has
pending in this case a claim for compensa-
tion as an administration creditor resulting
from their services as counsel for the Credi-
tors' Committee, thereby allegedly placing
their interest in conflict with those of the
general unsecured claims. Moreover, PAC
observes that the interests of creditors hold-
ing administration and priority claims will
conflict with the interests of general unse-
cured creditors in connection with the possi-
ble settlement of litigation concerned with
subordinating PAC's secured claim, inas-
much as there is not likely to be any funds
in this estate for distribution to any unse-
cured creditors unless the trustee is success-
ful or achieves a satisfactory settlement.
Thus PAC reasons that the interests of
administration and priority creditors may
be better served by settlement of the litiga-
tion than the interests of general unsecured
creditors who might not share in a settle-
ment unless the amount exceeds the figure
that would satisfy the priority claims in
full. Additionally, PAC asserts that the
Anderson firm will not be disinterested be-
cause counsel for the trustee will be re-
quired to investigate and examine the rea-
sonableness of the Anderson firm's claim
for compensation in their capacity as attor-
neys for the Creditors' Committee.

The trustee maintains that merely be-
cause the law firm selected by him previ-
ously represented the Creditors' Committee
in the Chapter 11 case, there is no reason
for any disqualification since their status in
the aborted Chapter 11 case is consistent
with representing the trustee in the present
Chapter 7 case. The trustee also points to
the fact that the Anderson firm did not
represent any of the debtor's unsecured
creditors before the Chapter 11 case was
commenced nor did they represent any spe-
cific creditor during the continuation of the
case; they represented the whole entity
known as the Creditors' Committee.

PAC's objection to the Anderson firm is
not founded on purely theoretical considera-
tions. They previously locked horns in the
Chapter 11 case when it appeared that all
of the debtor's assets were encumbered by
the holders of secured claims. As counsel
for the unsecured Creditors' Committee, the
Anderson firm contended that the secured
claim advocated by PAC should be subordi-
nated to the unsecured claims pursuant to

11 U.S.C. § 510(c) because the secured creditors allegedly participated in the undercapitalization of the debtor when it was formed, thereby contributing to the losses sustained by unsuspecting creditors who thereafter extended unsecured credit to the financially crippled debtor. Therefore, if the unsecured creditors are to receive any distribution in this Chapter 7 case it will have to be at the expense of PAC's secured interest.

■ The starting point is 11 U.S.C. § 327(a) which authorizes the trustee, with the court's approval, to employ professional persons, including attorneys, provided that they "do not hold or represent an interest adverse to the estate, and that they are *disinterested* persons . . .".[1] [Emphasis added]. The definition of a "disinterested person" is found in 11 U.S.C. § 101(13) and excludes creditors, equity security holders, insiders, investment bankers, directors, officers or employees of the debtor and those having adverse interests by reason of a relationship or connection with the debtor or an excluded investment banker, ". . . or for any other reason".[2] Since the Anderson firm is not disqualified by any of the specific relationships delineated under 11 U.S.C. § 101(13), PAC predicates its objection to the trustee's retention of the Anderson firm on the catch all clause "or for any other reason." PAC maintains that this phrase was intended to include any person who in the slightest degree had some interest or relationship that would color that independent and impartial attitude required by the Code. There is no question that the purpose of the incorporation of the disinterest requirement in 11 U.S.C. § 327 was to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration. Certainly a "disinterested" person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters. *In re Realty Associates Securities Corporation*, 56 F.Supp. 1007 (D.C.E.D. N.Y.1944).

■ In addition to the requirement that the trustee's chosen counsel should be free from entangling associations there also exists the principle that the trustee should have wide latitude in determining who shall be employed to perform legal services for the estate. "The relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together harmoniously. Only in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel . . .". *In re Mandell*, 69 F.2d 830, 831 (2d Cir. 1934).

The trustee's selection of counsel, however, must be consistent with the high standards required of the officers of the federal courts, including counsel to a trustee in a Chapter 11 case. There should be no opportunity for the exercise of conflicting interests or the appearance that dual loyalty

---

1. § 327. Employment of professional persons.

    (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

2. § 101. Definitions. In this title—

    . . . . .

    (13) "disinterested person" means person that—
    (A) is not a creditor, an equity security holder, or an insider;
    (B) is not and was not an investment banker for any outstanding security of the debtor;

    (C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;
    (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
    (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

may exist. Although it is stated in John, 7:24 "Judge not according to the appearance", heed must be given to Hamlet's admonition to Rosenkrantz: "There is nothing either good or bad, but thinking makes it so." Hamlet, II, ii, 259. Thus, Canon 9 of the American Bar Association's Code of Professional Responsibility states that a lawyer should avoid even the appearance of professional impropriety. Additionally, Ethical Consideration 5–15 amplifies this general language:

> "If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues employment. He should resolve all doubts against the propriety of the representation."

The spirit of the Bankruptcy Code is entirely consistent with this policy. Mr. Justice Douglas, who was particularly cognizant of the applicable principles in bankruptcy cases, said in *Woods v. City National Bank & Trust Co. of Chicago et al.*, 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1940):

> "A fiduciary who represents security holders in a reorganization may not perfect his claim to compensation by insisting that although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries 'at a level higher than that trodden by the crowd.' See Mr. Justice Cardozo in *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 62 A.L.R. 1."

Mr. Justice Jackson, thereafter expressed these sentiments in *Mosser v. Darrow*, 341 U.S. 267, 271–272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951) when he said:

> "The motives of man are too complex for equity to separate in the case of its trustees the motive of acquiring efficient help from motives of favoring help for any reason at all or from anticipation of counter favors later to come."

With these concerns in mind it cannot be said categorically that the interests of counsel for the Creditors' Committee in the aborted Chapter 11 case and those of attorney for the trustee are in conflict; both fiduciary positions strive to protect the interests of unsecured creditors. That counsel for the trustee may be required to review the administration claim and conduct of the attorneys for the Creditors' Committee is an argument that has been rejected because counsel for the Creditors' Committee are required to account to the court, not to the trustee. *In re Eloise Curtis, Inc.*, 326 F.2d 698 (2d Cir. 1964). There the Court of Appeals for the Second Circuit ruled that as a matter of law an assignee for the benefit of creditors whose accounts were still unsettled was nevertheless not disqualified from serving as trustee. Certainly the trustee will have to examine claims of creditors which are disputed, including those of members of the Creditors' Committee. The Anderson firm did not previously represent any of the members of the Committee, but even if they had, that fact alone would not serve to disqualify them. 11 U.S.C. § 327(c) expressly states that an attorney is not disqualified for employment solely because of having previously represented a creditor, but the attorney:

> "... may not, while employed by the trustee, represent, in connection with the case, a creditor."

This provision should be compared with 11 U.S.C. § 1103(b), which requires a Creditors' Committee's counsel to cease representation of any other entity in connection with the case after counsel begins to represent the Committee. Manifestly these provisions contemplate that counsel may have represented creditors before being employed by either the trustee or the Creditors' Committee. The potential for conflicts of interest is eliminated by requiring counsel to discontinue representing a creditor during the continuance of the bankruptcy case. Since the Anderson firm did not represent a creditor before the commencement of this case, there is no need to go further with respect to 11 U.S.C. § 327(c).

The disturbing point in this case is that while acting as counsel for the Creditors' Committee the Anderson firm advised against a potential settlement proposed by the secured creditors. This was their right and their duty, especially in light of the questions raised in the report submitted by the examiner who was appointed in accordance with 11 U.S.C. § 151104(b). Nevertheless, lurking behind such rejection may have been the thought that it would result in a conversion of the case to Chapter 7, which would require the appointment of counsel for the trustee, including the potential for additional fees. However, this court may not speculate as to the reasons for rejection, especially since there was no assurance that a trustee would be elected nor could one determine which law firm the trustee would choose. Moreover, counsel is well aware of the fact that if the secured claims are sustained there will be no funds available for any fees from this estate. Hence, there exists a strong motive for counsel to proceed diligently to question the status of the secured claims, including PAC's claim. PAC complains because its ox may be gored by the Anderson firm, whose preparations for this impending conflict have been substantial. Thus, the only conflict that this court sees on the horizon is a proper one between PAC and the trustee, and not a disqualifying conflict between the Anderson firm and this estate. In this connection, it has been noted by the Court of Appeals for the Second Circuit that disqualification motions, which are collateral to the merits of a case, have substantially increased in number and are used for purely tactical reasons. See *Armstrong v. McAlpin*, 625 F.2d 433, 437 (2d Cir. En Banc Court 1980); and cases cited therein. The impending conflict between the Anderson firm, on behalf of the trustee, and PAC is not sufficient reason for the disqualification of the trustee's chosen counsel.

It is clear that a law firm's prior representation of a Creditors' Committee does not disqualify it from representing a trustee in bankruptcy. *In re REA Holding Corporation*, 4 B.C.D. 1249 (Bkrtcy.S.D.N.Y.1979), reversed on other grounds 2 B.R. 733, 5 B.C.D. 1308 (D.C.S.D.N.Y.1980); *In re W. T. Grant Co.*, 4 B.R. 53, 82–84 (Bkrtcy.S.D.N.Y.1980). The Anderson firm's previous involvement in this case on behalf of the Creditors' Committee will not dilute the vigor with which all objections by the trustee with respect to preference claims and other issues should be pursued. Indeed, their previous familiarity with this case through their preparations on behalf of the Creditors' Committee will station this firm in a position where further delay and expense should be eliminated which might otherwise have been incurred if another law firm were brought into this case by the trustee to investigate the underlying events and transactions.

Finding no grounds for disqualifying the law firm chosen by the trustee as his counsel, PAC's motion objecting to the trustee's application to retain the Anderson firm is denied.

SUBMIT ORDER on notice.