### In the Matter of WHITNEY–FORBES, INC., an Illinois corporation, Debtor.

### Bankruptcy No. 72 B 1803.

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 19, 1983.

---

Robert Hallock and John Del Gaudio, Chicago, Ill., for Albert E. Sloan.

Avrum Dannen, Dannen, Crane, Heyman & Haas, Chicago, Ill., former trustee.

Professor David Coar, College of Law, DePaul University, Chicago, Ill., trustee.

James E. Carmel, Carmel, Baker & Marcus, Ltd., Joseph L. Matz, Teller, Levit & Silvertrust, P.C., Chicago, Ill., for David Coar.

Michael P. Comiskey, Lord, Bissell & Brook, Chicago, Ill., for Gayco.

## OPINION AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This matter comes on to be heard upon the Trustee's petition for leave to employ counsel.

On March 23, 1972, Whitney-Forbes, Inc. filed a petition for reorganization under Chapter XI of the Bankruptcy Act of 1898. The trustee, Avrum Dannen, ("Dannen") advises that the estate and the case were closed in 1975. On July 2, 1982 the case was reopened. The stated purpose for reopening the case was to void the sale of a paint spray gun patent to Albert E. Sloan (designated officer of the debtor as well as its principal shareholder) and to reacquire the patent and administer it for the benefit of the creditors. The basis for the avoidance is that the patent was not scheduled as

an asset of the debtor in its original petition, was not listed as one of the assets to be sold in the notice of sale sent to creditors, and was not listed among the assets sold in the first draft of an order approving the sale of assets as only potential causes of action were listed in the notice and the first draft of court order. Joseph L. Matz ("Matz") and James E. Carmel ("Carmel") acted as attorneys for the trustee (Dannen) with regards to the reopening of the case. During the initial proceeding, Matz and Carmel represented the interests of certain general unsecured creditors. On December 9, 1982, the first meeting of creditors of the reopened case was held at which David H. Coar ("Coar") unanimously was elected trustee.

Subsequent to his election, Coar petitioned for leave to employ Matz and Carmel as his counsel for the limited purpose of prosecuting the pending action on behalf of the estate against Albert E. Sloan. Coar alleges that Matz and Carmel are particularly qualified to conduct investigations and court proceedings for the protection of the estate because they have extensive knowledge and familiarity with the present action due to their earlier representations of the trustee (Dannen) and of individual creditors. In addition, Coar contends that Matz and Carmel represent no interest adverse to that of Coar or to the estate, as the interests of their clients were the same as those of the estate and the trustee; thus, Coar believes that their employment would be in the best interest of the estate.

The debtor strongly objects to Matz' and Carmel's representation of the trustee in this matter. The debtor believes that Matz and Carmel have a conflict of interest in connection with their representation of the former trustee (Dannen); in addition, the debtor contends that Matz and Carmel will be called to testify with respect to their knowledge of factual matters in connection with their representation of creditors of the debtor's estate. The debtor's belief that a conflict of interest exists is based on the following scenario: the debtor will call Dannen to testify as to the circumstances of the sale of the patent, and to the extent that the debtor establishes misconduct or negligence on the part of Dannen as former trustee, Dannen may be liable to the estate. Thus the trustee (Coar), in the interest of his fiduciary responsibilities has every incentive to thoroughly examine Dannen; arguably this will place Matz and Carmel in the position of representing competing interests.

Courts which have dealt with the issue of an attorney's conflict of interest have focused on Canons 4, 5 and 9 of the American Bar Association Code of Professional Responsibility as guiding standards. Canon 4 states that a lawyer should preserve the confidences and secrets of a client. Canon 5 provides that a lawyer should exercise independent professional judgment on behalf of a client, and Canon 9 requires that a lawyer avoid even the appearance of professional impropriety.

The Seventh Circuit has adopted the "substantial relationship" test in resolving cases that have raised an attorney's potential conflict of interest in violation of Canons 4 and 9. *Westinghouse Electric Corporation v. Gulf Oil Corporation,* 588 F.2d 221 (7th Cir.1978), *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.,* 607 F.2d 186 (7th Cir.1979). "The determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought." 588 F.2d at 224. Application of the substantial relationship test does not necessarily involve inquiry into the degree of relationship between the two matters but instead evaluates whether confidences had been disclosed in the one matter which will be harmful to the client in the other; once the presumption is established that confidential information was given to the attorney by the original client, disqualification must result if that information is relevant to the present suit. 588 F.2d at 225. In addition, doubts as to the existence of an

asserted conflict of interest should be resolved in favor of disqualification. *Id.*

Courts have been careful to note that the reaches of Canon 9 are not boundless. The following test has been established in an attempt to give objective and pragmatic content to Canon 9: an attorney should be disqualified under this Canon only where "there is a reasonable possibility of improper conduct" and "the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir.1976).

▮ The Seventh Circuit has recognized that the principle enunciated in Canon 5 may require disqualification where a lawyer is concurrently representing adverse clients. This results even if the subject matters of the representations are completely different. *Gulf Oil,* 588 F.2d at 229. Such disqualification would be premised upon the possibility that pre-existing loyalties to one client may cause the attorney to temper his representation of the other. But as with Canon 9, courts employ a flexible, not monolithic, approach in utilizing this principle. "Certainly in these instances the consent of the clients to the mutual representation will preclude disqualification since the clients are in an adequate position to judge the effects of the divided loyalties and may indeed determine this effect to be so minimal as to obviate any fears of inadequate representation." 588 F.2d at 229.

Other courts have also recognized the proposition that a former client may consent to the employment of the attorney by an adverse party. *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83 (5th Cir.1976). This has been found even where the former client is involved in the case as a party. *Id.* This situation can typically occur where the former client realizes that any prior disclosure will not prejudice him in the new case. *Consolidated Theaters v. Warner Bros. Circuit Management Corp.,* 216 F.2d 920 (2d Cir.1954). Such consent has been held to prevent the disqualification of an attorney even in a criminal case.

*United States v. Garcia,* 517 F.2d 272 (5th Cir.1975).

▮ In resolving issues concerning potential conflicts of interest and violations of Canons 4 and 9, courts have recognized the significance of two competing interests that need to be weighed against the possibility of disqualification. All courts should keep in mind a reasonable balance between a client's right to his own freely chosen counsel and the need to maintain the highest ethical standards. *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.,* 607 F.2d 186, 193 (6th Cir.1979). As a result, while rigidly enforcing the ethical obligation of confidentiality, the courts have seen no need to fashion a rule that prevents an attorney from ever representing an interest adverse to that of a former client. *Duncan v. Merrill Lynch, Pierce, Fenner and Smith,* 646 F.2d 1020, 1027 (5th Cir.1981). Similarly, a mechanical application of Canon 9 is to be avoided, for the unnecessary disqualification of an attorney under an over broad application of "the appearance of impropriety" standard may unfairly deny to a litigant counsel of his choice, thereby contributing to public suspicion of the bar and the judiciary. *Westinghouse Electric Corporation v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir. 1976). If public suspicion is aroused, the resulting harm to the client and the judicial system will outweigh the personal benefits of regulating the professional conduct of attorneys. *Westinghouse Electric Corporation v. Rio Algom Limited,* 448 F.Supp. 1284, 1304, citing *International Electronics Corporation v. Flanzer,* 527 F.2d 1288, 1293, 1295 (2d Cir.1975).

▮ In order for a court to grant a motion for disqualification, it has to find that there is a true adversity of representation. *City of Cleveland v. Cleveland Electric Illuminating,* 440 F.Supp. 193, 208 (N.D.Ohio, 1977). In a bankruptcy context, the prevalant view is usually that the interests of a general unsecured creditor and those of the trustee are not adverse. According to section 44(c) of the Bankruptcy Act of 1898 and Bankruptcy Rule 215(c) an attorney

should not be disqualified to act for the trustee merely because of his representation of a general creditor. The attorney selected to represent the trustee should not be the attorney who acted for the bankrupt, nor should he have represented a former trustee in matters respecting that trustee's removal. However, even when it has been thought that a creditor's attorney represented an interest adverse to the bankrupt estate, it has usually been held that such dual association would not operate to deny his fair compensation for services which ensures to the benefit of the estate. Collier on Bankruptcy, ¶ 44.23 at 1693 (14th ed. 1978).

Bankruptcy courts generally have allowed former counsel to the creditors' committee to represent the trustee. In *In re Market Response Group, Inc.,* 20 B.R. 151 (Bkrtcy.E.D.Mich.1982), the court held that the role of counsel to the creditors' committee in a Chapter 11 proceeding is not *per se* in conflict with the role of counsel to the trustee when said counsel is subsequently appointed to represent the trustee. Accord, *In re W.T. Grant,* 4 B.R. 53 (Bkrtcy.S.D.N.Y.1980). Similarly a creditor's motion to disqualify from representing the trustee an attorney who had represented the creditors' committee was denied in *In re Codesco,* 18 B.R. 997 (Bkrtcy.S.D.N.Y.1982). In *Codesco,* the creditor asserted that the attorney's familiarity with the affairs of the creditor's committee led to his allegiance to their interests; thus, he lacked the requisite degree of impartiality and detached judgment that was expected from attorneys employed by the trustee. Specifically, the creditor alleged two primary areas in which the problem of conflicting loyalties would arise: first, the attorney for the trustee would be required to challenge disputed claims filed by members of the creditors' committee; and second, the debtor's statement of affairs revealed that there may have been preferential transfers to members of the creditors' committee which the trustee would have the responsibility for recovering. 18 B.R. at 998. The court did not believe that these interests were in conflict; rather, both fiduciary positions required the

attorneys to strive to protect the interests of unsecured creditors. 18 B.R. at 1000. In addition, the argument that counsel for the trustee may be required to review the claims and conduct of the attorneys for the creditors' committee was rejected because counsel for the creditors' committee are required to account to the court, not to the trustee. 18 B.R. at 1000.

Beyond the problem with adverseness, bankruptcy courts have emphasized that the trustee should have wide latitude in determining who shall be employed to perform legal services for the estate. *Codesco,* 18 B.R. at 999. A successful attorney-client relationship is one in which the parties can work together harmoniously. The establishment of this demands that the client have personal faith and confidence in the attorney. Thus, "only in the rarest case should the trustee be deprived of the privilege of selecting his own counsel." *In re Mandell,* 69 F.2d 830, 831 (2d Cir.1934).

■ Although the trustee's selection of counsel must be consistent with the high standards required of the officers of the federal courts, the facts of the case at bar do not support a motion for disqualification. With regards to Canons 4 and 9, this court must strike a balance between the trustee's right to his own freely chosen counsel and the need to maintain the highest ethical standards. *Baxter Travenol,* 607 F.2d at 193. Case law concerning Canon 5 also suggests that the former client's consent to the alleged adverse representation significantly reduces the possibility that violation of the American Bar Association Code of Professional Responsibility will occur. In the case at bar Dannen has consented to Matz' and Carmel's representation of Coar. This court believes that the trustee's right to his freely chosen counsel should be the prevailing policy because no true conflict of interest exists in the case at bar.

■ Canon 5 standards pose another problem in the motion for disqualification as the debtor claims that Matz and Carmel will be called to testify with respect to the previous representation of creditors. Disci-

plinary Rule 5–101(B) of the American Bar Association Code of Professional Responsibility provides:

"(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows, or it is obvious, that he or a lawyer in his firm ought to be called as a witness, except he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter;

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

DR 5–102(A) provides:

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns, or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial, and his firm, if any, shall not continue representation, and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4)."

These disciplinary rules are premised on the notion that prejudice both to litigants and the practice of law can be avoided if lawyers are barred from operating as counsel in cases where they also testify as material witnesses. *General Mill Supply Co. v. SCA Services, Inc.,* 505 F.Supp. 1093, 1096 (E.D. Mich.1981). However, case law demonstrates that courts are unwilling strictly to apply these disciplinary rules. "Before disqualification can come about, the cases seem to require a balancing and a showing of prejudice to the client's case, or prejudice

to opposing counsel ... or prejudice to the trial process and public perception of it." 505 F.Supp. at 1096. Sanctions should not be imposed unless the claimed misconduct in some manner taints the underlying trial or the legal system. *Greenbaum-Mountain Mortgage Company v. Pioneer National Title Insurance Company,* 421 F.Supp. 1348, 1353 (D.Colo.1976).

■ This court does not believe that any of the parties protected by disciplinary Rules 5–101(B) and 5–102(A) will be prejudiced by Matz' and Carmel's testifying in the instant proceeding. The trustee, Coar, will not be prejudiced as it has already been demonstrated that no conflict exists between his interests and those which Matz and Carmel previously represented. In addition, this court is not convinced that prejudice to opposing counsel is the inevitable result of Matz' and Carmel's representation of Coar. The issue presently facing this court is the legal significance of a sale of an asset that was not included in the debtor's schedule of assets and liabilities, where the sale was consummated without proper notice to creditors, and where no valuation of the asset had been made. As these facts are not contested, Matz and Carmel should be allowed to testify, if the testimony is necessary, according to the dictates of 5–101(B)(1). The trial process and public perception thereof will not be injured in any way by Matz' and Carmel's representation of Coar because, as stated earlier, their present and prior representations do not involve adverse interests.

One factor which differentiates adversary proceedings in bankruptcy cases from run of the mill civil cases is that each adversary proceeding is separate and distinct from others which may arise in the same case; each adversary proceeding is a miniature case. Matz and Carmel will not, in the instant proceeding, be testifying with respect to, or questioning Dannen with respect to the ultimate issue about which the conflict of interest might arise, i.e. Dannen's liability. If an adversary proceeding should be brought subsequently against Dannen, there is no doubt that the testimo-

ny in this proceeding will be available for impeachment purposes, but it will not be admissable to establish the question of liability. Similarly, at that time it will become germane whether Matz and Carmel (a) should be permitted to represent Coar in spite of their prior representation of Dannen and (b) whether they should be permitted to testify against Dannen if they are allowed to act as attorneys for Coar. Those questions need not be addressed before they arise, and comments made in this opinion are not intended to be a forecast as to how this court might respond if the questions ever do arise as concrete problems.

The principal danger which results from having active participation by an attorney who will be a witness is that a jury will accord a disproportionate weight to his testimony. That problem does not exist in a bench trial, which is contemplated here. From ten years of experience with most of the lawyers in the case as a result of their having appeared before it a number of times, the court has formed an opinion as to their credibility and high ethical standards. There is no practical hazard to having Matz and Carmel represent the present trustee, Coar, in spite of the fact that they or other attorneys for Coar may feel obliged at some time in the future to prosecute the former trustee, Dannen, for misconduct or negligence. Dannen has consented to their representation of Coar in the instant adversary proceeding. The court considers such consent to be without prejudice to Dannen's taking a contrary position in the event that Coar shall determine in the future that a subsequent adversary proceeding should be maintained against Dannen.

IT IS ORDERED THAT Matz and Carmel are authorized to represent the present trustee, Coar, in the instant adversary proceeding, notwithstanding the fact that earlier they had represented a prior trustee and before that had represented individual creditors. The overall savings in time and attorneys' fees vastly outweigh the theoretical conflicts, all of which are exposed on the table and are known to all of the parties to the proceeding.