## In re NU–SOUTH INDUSTRIES, INC.

### Bankruptcy No. 9007242SEG.

United States Bankruptcy Court, S.D. Mississippi.

May 9, 1990.

As Amended June 22, 1990.

Glenn W. Merrick, Denver, Colo., pro se.

Neil P. Olack, Jackson, Miss., for respondent.

## ORDER

EDWARD R. GAINES, Bankruptcy Judge.

This matter is before the Court on the motion for an order to be admitted *pro hac vice* to practice in these proceedings in this Court, filed by Glenn W. Merrick, a member of the law firm of Davis, Graham and Stubbs of Denver, Colorado, on behalf of the debtor, Nu–South Industries, Inc. Having reviewed the motion, the objections thereto filed by Mississippi Chemical Corporation and the United States Trustee, and the briefs submitted by the parties, the Court is of the opinion that serious and incapacitating conflicts of interest are abundantly present in this case, which require that the objections be sustained and that the motion filed by Glenn W. Merrick be denied.

### I. Facts

This Chapter 7 proceeding was commenced by the filing of a voluntary petition on February 1, 1990. Stephen H. Leech, Jr., of the law firm of Phelps, Dunbar, Marks, Claverie and Sims ("Phelps Dunbar") of Jackson, Mississippi, is counsel for the debtor. H.S. Stanley, Jr., is the Chapter 7 trustee.

The motion filed by Glenn W. Merrick of the law firm of Davis, Graham and Stubbs, Denver, Colorado, requests that Mr. Merrick be admitted *pro hac vice* to serve as co-counsel for the debtor with Phelps Dunbar. Mr. Merrick is not licensed to practice law in the State of Mississippi. It is undisputed that Mr. Merrick and his law firm have been serving as both counsel for the debtor and another corporation known as Nu–West Industries, Inc. ("Nu–West"). Mr. Merrick seeks to serve simultaneously as counsel for the debtor and Nu–West in this Chapter 7 proceeding.

Based on the schedules filed by the debtor, information developed at the first meeting of creditors, and other pleadings filed in this case, the following facts have been established concerning the relationship between the debtor and Nu–West:

1. Nu–West is the sole shareholder of the issued and outstanding shares of the debtor's common stock.

2. Nu–West is scheduled as an unsecured creditor in the amount of $43,243,-000.00. This amount represents 97% of the unsecured claims and 68% of the total debt owed by the debtor.

3. The debtor and Nu–West are joint obligors on an indebtedness owed to John Deere Industrial Equipment Company in the alleged amount of $488,571.99. This indebtedness was in default at the time of filing. Several pieces of equipment held as security by John Deere are essential to the treatment of the contaminated water on the debtor's property.

4. A constant and uninterrupted supply of natural gas is vital to the preservation and safety of the facility. Steven W. Gampp, Vice-President and Secretary for Nu–South Industries, Inc. ("debtor") testified at the first meeting of creditors that the debtor's board of directors had authorized Lou Whitlock, a Vice President of

Nu–West Industries, Inc. ("Nu–West") with experience negotiating natural gas contracts, to negotiate and execute a natural gas contract on behalf of the debtor with Trade and Development Corporation ("TDC"). A proof of claim in the debtor's case has been filed by TDC in the amount of $40,462.10.

5. Winthrop Resources Corporation ("WRC") is mentioned on the debtor's Schedule A–2 as a lessor of computer and radio equipment and photostatic copiers. The amount listed as owing to WRC under the leases is $115,486.00. The following is noted next to WRC in Schedule A–2:

> Listed for informational purposes only. Obligor on Winthrop Resources corporation instruments is Nu–West Industries, Inc. and property to be returned to Nu–West Industries, Inc.

This is consistent with the notation found at Item No. 8 of debtor's Statement of Financial Affairs ("Property held for another person").

6. Steven Gampp, Vice–President, Treasurer and Secretary of Nu–West, was a Vice–President and Secretary of the debtor. Mr. Gampp testified at the first meeting of creditors that Craig Harlen, President of Nu–West, was President of the debtor. Mack Barber and Al Daubach, Executive Vice–Presidents of Nu–West, were Executive Vice–Presidents of the debtor. Mr. Daubach was a director of the debtor, but was not a director of Nu–West. Mr. Gampp also testified that certain administrative functions were performed by Nu–West for the debtor, the primary one being marketing of finished goods by Nu–West for the debtor. Mr. Gampp testified that the sales staff of Nu–West sold finished goods for the debtor and charged the Debtor on inter-company allocations.

7. Mr. Gampp testified at the first meeting of creditors that authorized signatories on accounts of the debtor included two officers of Nu–West, who were also officers of the debtor. To date, no evidence has been presented to the Court that any of these persons improperly executed control over any debtor's account for the benefit of Nu–West (although there has been no reason to present any such evidence at this point in time).

8. The debtor and Nu–West filed consolidated tax returns.

9. At the initial meeting of creditors in this case, Mr. Gampp testified that in order to realize economies of coverage cost, Nu–West negotiated a master insurance policy to cover the assets of each of the corporations in the corporate group. Mr. Gampp testified that the debtor (and all other Nu–West subsidiaries) were then billed their proportional share of the resulting premiums under the Master Policy by Nu–West.

10. Invoices for payment by Nu–Gulf Industries, Inc., a subsidiary of Nu–West which was recently sold, appear as liabilities of the debtor. The corporate representative of the debtor at the first meeting of creditors, Steven Gampp (also an officer of Nu–West), indicated that these debts total approximately $260,000.00 and are properly listed as obligations of the debtor since the debtor received the product or service that forms the basis of the claim.

11. Nu–West appears to be an insider of the debtor under § 101(30) of the Bankruptcy Code. The debtor appears to have made payments to Nu–West during the one-year period prior to the filing of the bankruptcy petition. It is alleged that Nu–West became the credit facility for the debtor when other credit became unavailable.

12. Nu–West has guaranteed payment of Mr. Merrick's charges for legal services and expenses on behalf of the debtor.

13. The debtor and Nu–West are co-defendants in the lawsuit styled *Big River, Inc. v. Nu–South Industries, Inc. and Nu–West Industries, Inc.*, U.S. Bankruptcy Court, E.D. Ark., Case No. AP 89–2011.

## II. Issue of Law

The issue to be decided here is whether a conflict of interests exists which requires disqualification of Glenn W. Merrick and his law firm from representing the debtor with Phelps Dunbar, in light of the fact that Davis, Graham and Stubbs represents *and will continue to represent* Nu–West Industries, Inc., simultaneously with the debtor, in a wide range of corporate litigation and other legal matters.

## III. Conclusions of Law

The standards for the employment of professionals are strict in bankruptcy. Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process. *In re Cropper Co.*, 35 B.R. 625, 629 (Bankr.M.D. Ga.1983). The standards for reviewing

conflicts of interests are best summarized by Judge Harold C. Abramson in the case of *In re Michigan General Corp.*, 78 B.R. 479 (Bankr.N.D.Tex.1987), *aff'd in part, rev'd and remanded in part on other grounds, sub nom. Diamond Lumber v. Unsecured Creditors' Committee*, 88 B.R. 773 (N.D.Tex.1988). Judge Abramson held that *any possibility* of conflict may warrant disqualification. If there is any doubt as to the existence of a conflict, that doubt should be resolved in favor of disqualification. 78 B.R. at 484 (citing *In re Johore Investment Co. (U.S.A.), Inc.*, 49 B.R. 710, 713 (Bankr.D.Hawaii 1985).

The ABA Code of Professional Responsibility requires that an attorney avoid even the appearance of impropriety. ABA Code of Prof. Res., Canon 9. Mr. Merrick has clearly indicated that his law firm has represented and *will continue to represent* Nu–West on a regular basis in a variety of matters and litigation. In addition to this ongoing representation of Nu–West, Mr. Merrick seeks through his motion to represent Nu–South in this Chapter 7 proceeding. The motion for an order to be admitted *pro hac vice* did not disclose the fact that Mr. Merrick and his law firm would be representing both Nu–West and the debtor. Said motion was prepared by local counsel, Phelps Dunbar. The continued representation of Nu–West by Mr. Merrick and his firm was disclosed to Nu–South's largest secured creditor, Mississippi Chemical Corporation, prior to Nu–South's Chapter 7 filing. It was counsel for Mississippi Chemical Corporation who first informed the Court of the dual representation of Nu–West by Mr. Merrick. But for the objection filed by Mississippi Chemical Corporation as joined by the United States Trustee, this Court would not have known of the duality of representation by Mr. Merrick.

The law requires that counsel for the debtor assist the trustee in performing his duties. The failure to have counsel for the debtor with undivided loyalty poses a serious threat of injury to other creditors. As pointed out by Mississippi Chemical Corporation on pages 4 and 5 of its rebuttal brief, would Mr. Merrick assist the trustee in:

1. filing a preference action against Nu–West?

2. filing an alter ego or piercing the corporate veil action against Nu–West?

3. objecting to the claim of Nu–West?

4. reclassifying or subordinating the claim of Nu–West?

5. having the deficiency owed to John Deere paid by Nu–West instead of the estate?

6. investigating the affairs of the debtor to determine whether obligations purportedly owed by the debtor are actually owed by Nu–Gulf?

7. investigating the affairs of the debtor to determine whether obligations purportedly owed by the debtor are actually owed by Nu–West?

These questions clearly demonstrate the potential conflict of interests which are so glaringly obvious in this case.

Courts have consistently held that if there exists *any doubt* as to whether or not there is a conflict of interests, such doubt should be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2nd Cir.1975); *In re Johore Investment Co. (U.S.A.), Inc.*, 49 B.R. 710, 713 (Bankr.D.Hawaii 1985); *In re Whitney–Forbes, Inc.*, 31 B.R. 836, 838–39 (Bankr. N.D. Ill.1983).

The role of debtor's counsel in this Chapter 7 proceeding is significant. In the case of *In re Freedom Solar Center, Inc.*, 776 F.2d 14 (1st Cir.1985), one attorney represented both the debtor and the debtor's sole shareholder in the Chapter 7. The trustee sought to have the attorney disqualified as a result of the dual representation. The first Circuit found a prima facie case for disqualification requires three elements:

1. representation of multiple clients by the attorney;

2. differing interests of the clients; and

3. absence of full disclosure of the multiple representation and consent of the clients.

As Mississippi Chemical Corporation points out, the prima facie elements set forth above by the First Circuit exist in this case. First, Mr. Merrick would be representing multiple clients. Second, these clients have differing and conflicting interests. The debtor would benefit from the John Deere and Nu–Gulf debts being removed from this case, the law suit damages being paid by Nu–West, and transfers to Nu–West being recovered. These interests differ and conflict with the interests of Nu–West. Third, the trustee in this case has not consented to Mr. Merrick's dual

representation, and disclosure of the dual representation was not made until Mississippi Chemical Corporation filed its objection.

In addition to the foregoing, authority for denying Mr. Merrick's motion is contained in Canon 5 of the ABA Model Code of Professional Responsibility, which states that "a lawyer should exercise independent professional judgment on behalf of a client." The disciplinary rules and ethical considerations, cited on pages 12 through 14 of the rebuttal brief of Mississippi Chemical Corporation bind this Court to deny Mr. Merrick's motion.

Additional authority for denying the motion is found in Canon 9 of the ABA Model Code of Professional Responsibility which states "a lawyer should avoid even the appearance of the professional impropriety." Actual impropriety is not required. It is *the appearance of impropriety* that must be avoided.

Both Nu-West and Mississippi Chemical discuss in their briefs § 327(a) of the Bankruptcy Code. Although this particular section of the Code is not technically applicable to Chapter 7 cases, the ethical considerations and standards set forth above require disqualification under the extraordinary circumstances of this case.

### IV. Conclusion

If this Court were to grant the motion, Mr. Merrick would be serving as counsel for the debtor on the one hand, and counsel for Nu-West, a creditor, alleged insider, stockholder, joint obligor, co-defendant, and guarantor of fee payments on the other hand. The trustee's role in this case is complicated and if he is going to be assisted by debtor's counsel it must be counsel that is totally independent of and from Nu-West. The debtor is presently being represented by Phelps Dunbar, a Mississippi law firm. The Court has been informed that Nu-West has *guaranteed* payment of the legal fees of Phelps Dunbar in this case. This greatly concerns the Court. Phelps Dunbar, the United States Trustee, Mississippi Chemical Corporation, the case trustee, the attorney for the case trustee, and all creditors must be vigilant in assuring that the payment of fees by Nu-West in no way adversely influences debtor's counsel.

A separate order shall be entered pursuant to Federal Rule of Civil Procedure 58 and Bankruptcy Rule 9021.