**In the Matter of F & C INTERNATIONAL, INC., Debtor.**

**Bankruptcy No. 93–11688.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 30, 1993.

Thomas Kilcoyne, Cohen, Todd, Kite & Stanford, Cincinnati, OH, Richard Pachulski, Pachulski, Stang, Ziehl & Young, Los Angeles, CA, for petitioner.

James R. Cummins, Brown, Cummins & Brown Co., LPA, Cincinnati, OH, for respondent.

**ORDER RE: DEBTOR'S APPLICATION TO EXPAND THE SCOPE OF THE EMPLOYMENT ENGAGEMENT OF BROWN, CUMMINS & BROWN, CO., L.P.A., AS ITS SPECIAL CO–COUNSEL**

J. VINCENT AUG, Jr., Bankruptcy Judge.

This Chapter 11 case is before the Court on the Application of the Debtor-in-Possession to Employ, on Contingent Fee Basis, Waite, Schneider, Bayless & Chesley Co., L.P.A. As Its Special Co–Counsel and to Expand the Scope of the Employment Engagement of Brown, Cummins & Brown Co., L.P.A. as Its Special Co-counsel (Doc. 212), the Objection thereto filed by the Unsecured Creditors' Committee (Doc. 236) and the Supplemental Memorandum in Support (Doc. 256) filed by the Debtor.

A hearing was conducted on August 24 at which the Court approved that portion of the application pertaining to the retention of Waite, Schneider, Bayless & Chesley and took under submission the question of the proposed expanded scope of employment of Brown, Cummins & Brown.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

# I. BACKGROUND

On April 28, 1993, the Debtor filed an application in this Court for authority to retain Brown, Cummins & Brown Co., L.P.A. ("BCB") to represent the Debtor as special securities counsel. The Debtor requested expedited disposition of the application in order for BCB to comply quickly with an outstanding SEC subpoena. The affidavit of counsel filed concurrently with the application disclosed that in addition to representing the Debtor in securities and related corporate matters, the law firm was prosecuting a lawsuit against Jon Fries, the former chairman, president, and CEO of F & C, alleging fraud and breach of fiduciary duty. In addition, the law firm was retained on April 2, 1993 to represent the outside directors of F & C, primarily Lawrence J. Gitman, Frederic H. Mayerson and Robert Leshner, and has appeared on behalf of Messrs. Leshner and Mayerson in a class action securities lawsuit pending in federal District Court in which the directors are named defendants.[1]

No objections to the April 28 retention application were filed, and an Order Authorizing Employment of Brown, Cummins & Brown was entered on May 13, 1993. (Doc. 81) On May 28, at the Debtor's request, the Court entered an Amended Order Authorizing the Employment of Brown, Cummins & Brown to clarify that the law firm's employment was authorized *nunc pro tunc* to the earlier of the petition date or the first date after the petition date on which the law firm rendered services on behalf of the Debtor.

On July 22, 1993, the Debtor filed the application that is now before us. This application seeks to expand the scope of the employment of BCB so that the firm may act as co-counsel with the firm of Waite, Schneider, Bayless & Chesley in pursuing litigation against certain of F & C's accounting professionals in connection with the purported inventory fraud.

---

1. On September 1, 1993, Messrs. Leshner and Mayerson instituted an adversary proceeding against F & C and others for recovery of a $45,000 insurance premium paid by Leshner and Mayerson on behalf of F & C to prevent a

Directors & Officers liability insurance policy from lapsing. In addition, both Messrs. Leshner and Mayerson have filed proofs of interest in this case. BCB does not represent Leshner or Mayerson in either of these matters.

The Unsecured Creditors' Committee filed an objection to this latest application insofar as it pertains to the expansion of BCB's role. While the Committee expressed its reservations about the potential duplication of costs and increased expenses inherent in having two firms working on the same lawsuit, the crux of the objection is the perceived conflict of interest in having BCB represent both the Debtor and the Debtor's outside directors in matters concerning the alleged fraud.

## II. OPINION AND ORDER

Section 327 of the Bankruptcy Code sets forth the requirements to be met by counsel seeking court authorization of their employment by a debtor. We are dealing with a request to approve an expanded role for special counsel, not general bankruptcy reorganization counsel, and thus § 327(e) applies.

Section 327(e) deals with retention of professionals who have previously represented the debtor, but who nevertheless may provide necessary services to the debtor in matters where counsel represents no adverse interest. Section 327(e) states:

The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

■ The Debtor argues that since special counsel retained under § 327(e) is not subject to the same "disinterestedness" requirement as professionals retained under § 327(a), special counsel must only show that it has no *actual* conflict of interest with the estate in the matter upon which it is to be engaged. Thus, according to the Debtor, BCB should be authorized to act as co-counsel in the contemplated malpractice action since it has only a potential conflict

and no actual conflict, and potential conflicts are not tantamount to an interest adverse to the estate.

We disagree. The test is not whether an "actual conflict" exists, but whether counsel represents an adverse interest.

■ This bankruptcy was filed on the heels of allegations of massive fraud. There has been much speculation as to the nature and the extent of the alleged fraud. The litigation contemplated by the instant application will go to the heart of these allegations and will, presumably, seek to establish the identity of those who knew about the fraud and the extent and timing of their knowledge. It is possible, if not probable, that when that litigation is filed, the defendant or defendants will counterclaim against not only the Debtor, but against its officers and directors as well. It is equally plausible that the Debtor could cross-claim against the officers and directors.[2]

The Debtor, BCB, the Chesley firm and others argue that the outside directors and the Debtor have a community of interest in any litigation arising out of the fraud allegations, and we have no reason to question their unity. Our experience, however, has shown that in cases alleging fraud and mismanagement, the passage of time sometimes creates shifts in allegiances and differences in people's perceptions of fault, and thus, what is unity today may be discord tomorrow. This has particular resonance where, as here, the directors have sued the Debtor on other matters and are significant stakeholders in the outcome of both the reorganization and the surrounding litigation.

The applicants here have assured the Court in oral argument that any conflict generated by the dual representation is merely potential and that when and if an actual conflict should arise, BCB will withdraw immediately. We believe the time for that withdrawal is now. We agree with the Court in *In re Kendavis Industries*

---

**2.** The Debtor currently believes there is no basis for claims against the outside directors, but has authorized Pachulski, Young, Stang & Ziehl, its reorganization co-counsel, to conduct an independent investigation as to possible claims.

*Int'l, Inc.,* 91 B.R. 742 (Bankr.N.D.Texas 1988), when it held that "[t]he concept of *potential* conflicts is a contradiction in terms. Once there is a conflict, it is *actual—not potential.*" *Id.* at 754. The strictures of § 327 are "intended to prevent even the appearance of conflict irrespective of the integrity of the person or firm under consideration," *In re Codesco, Inc.,* 18 B.R. 997, 999 (Bankr.S.D.N.Y.1982), and "to remove the temptation and opportunity to do less than duty demands." *In re Martin,* 817 F.2d 175, 181 (1st Cir.1987).

None of the foregoing is to question the integrity of BCB or to suggest that its representation has been anything other than of the highest caliber. Indeed, we agree with the business wisdom that the combined negotiating leverage of the two law firms could very well promote an early settlement of the contemplated litigation. Section 327(e) requires, however, that any attorney representing the debtor must hold no interest adverse to the estate, and we believe that under the circumstances of this case, representation of the outside directors in matters arising from the alleged fraud constitutes an interest adverse to the estate.

We are led to this conclusion by an abundance of case law in this area. *See, e.g., In re Neidig Corp.,* 113 B.R. 696 (D.Colo. 1990); *In re Ginco, Inc.,* 105 B.R. 620, 621 (D.Colo.1988) (dual representation by law firm of estate and principal shareholder, officer and debt guarantor presented sufficient conflict to raise "adverse interest" precluding employment of law firm as special counsel for debtor); *In re Roger J. Au & Son, Inc.,* 101 B.R. 502 (Bankr.N.D.Ohio 1989) (counsel could not represent debtor's sole shareholder/creditor in adversary proceeding in bankruptcy court while representing debtor in state court action); *In re Kendavis Industries Int'l, Inc.,* 91 B.R. 742, 752 (Bankr.N.D.Tex.1988) ("[W]henever counsel for a debtor corporation has any agreement, express or implied, with management or a director of the debtor, or with a shareholder, or with any control party, to protect the interest of that party, counsel holds a conflict. That conflict is not poten-

tial, it is actual, and it arises the date that representation commences."); *In re Baldwin–United Corp.,* 45 B.R. 378 (Bankr. S.D.Ohio 1983); and *In re Johore Invest. Co. (U.S.A.), Inc.,* 41 B.R. 318, 319 (Bankr. D.Ha.1984).

Canon 5 of Ohio's Code of Professional Responsibility, its Ethical Considerations and Disciplinary Rules, also speak to the requirement that an attorney exercise independent professional judgment on behalf of his client.

Ethical Consideration 5–18 provides:

A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

■ Disciplinary Rule 5–105 requires that a lawyer shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR5–105(C). DR5–105(C) allows the representation of multiple clients if it is obvious that counsel can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each. Here, even if the directors and the corporation consented to the dual representation, we would not approve such an arrangement, because representation of a debtor and its estate entails more than representation of the corporation. The representation must be for the benefit of and in the best interests of the

**224**

creditors and other interest holders of the debtor's estate. Thus, in the bankruptcy context, counsel, even special securities counsel, owes a duty far broader than that normally owed by corporate counsel to its client.

For all the reasons stated above, the Application of the Debtor to Expand the Scope of Brown, Cummins & Brown Co., L.P.A., as Special Co-counsel is DENIED.

In addition, the Court, on its own motion, has reconsidered the April 28, 1993 application of the Debtor to employ Brown, Cummins & Brown as special securities counsel. It is clear to us now, if it was not at the time, that the same conflict exists with respect to that representation and is disqualifying. Accordingly, BCB shall have 15 days from the date of this Order to decide whether it wishes to continue to represent the Debtor in light of the above ruling. If it does wish to continue in its representation of the Debtor, it shall file with the Court copies of any documentation substantiating its withdrawal as counsel for the directors. In the absence of such documentation, the Court shall place of record an order terminating the employment of Brown, Cummins & Brown.

**IT IS SO ORDERED.**